The judgment of conviction and order should be affirmed.

McLENNAN, WILLIAMS, HISCOCK and DAVY, JJ., concurred.

Judgment, conviction and order affirmed and case remitted to the County Court of Livingston county pursuant to section 547 of the Code of Criminal Procedure.

---

OCTAVIUS O. COTTLE and CLAYTON L. HILL, as Executors, etc., of JOHN J. P. READ, Deceased, Respondents, *v.* WALTER CARY and THOMAS CARY, Appellants, Impleaded with Others.

*City of Buffalo — the name of a resident assessed for taxation must appear on the rolls — distinction between resident and non-resident land, how far abolished — enforcement of the lien of the tax.*

Section 42 of the charter of the city of Buffalo (Laws of 1870, chap. 519), which provides, "They (the assessors) shall prepare an annual assessment roll of each ward, which shall consist of two parts; the first part shall be the assessment of the taxable lands of the ward, substantially in the form in which

town assessors are required to make them, except that no distinction shall be made between the lands of residents and non-residents, but those of both shall be assessed in form as resident lands," was intended to abolish the distinction between the lands of resident and those of non-resident owners so far as the form of assessment was concerned, but in all other respects the purpose was to adhere to the form applicable to town assessments.

Under the statute relating to town assessments (2 R. S. 1683 [9th ed.], § 9) providing that there shall be placed in the first column of the assessment roll " the names of all the taxable inhabitants in the town or ward as the case may be," and then in separate columns, opposite, the quantity of the land, its value and the personal property, in assessing resident lands in the city of Buffalo the name of each owner or occupant must be contained in the roll opposite the parcel owned or occupied by him. Consequently an assessment of resident lands, not to the owner or occupant thereof, but to a third person, is absolutely void.

*Semble*, that, while the charter of the city of Buffalo makes taxes levied upon real estate a lien upon the land, it does not permit resort to be had to the lien until the remedies ordinarily available against a tax debtor have been exhausted.

WILLIAMS, J., dissented.

APPEAL by the defendants, Walter Cary and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Erie on the 2d day of December, 1901, upon the decision of the court, rendered after a trial at the Erie Special Term, adjudging certain tax certificates and tax deeds null and void.

*Percy S. Lansdowne* and *Charles L. Feldman,* for the appellants.

*Octavius O. Cottle* and *Edmund P. Cottle,* for the respondents.

SPRING, J. :

This action was brought by the plaintiffs as the owners in fee of the lands described in the complaint to set aside certain tax deeds and tax certificates. Upon a prior appeal (61 App. Div. 66), where the facts are fully stated, a new trial was granted because the record did not show that the land was occupied when it was assessed, but " so far as appears the property was all the years vacant and unoccupied and the owners were non-residents," and if such were the facts the assessments were valid. The case comes to us after another trial, without the evidence, but upon the decision of the trial court containing the facts found in detail. It appears from the findings that the lands in controversy were not assessed to the

owner or occupant but to a third person; that during all the years covered by the assessments upon which the tax deeds and tax certificates are founded the owner of the lands resided in the ward where they are situated. The plaintiffs contend that the assessments, and consequently the tax deeds and certificates, are void for the reason that the assessments were made to a third person instead of to the occupant or true owner. The appellants urge that under the provisions of the charter of the city of Buffalo this is unnecessary. The bone of contention is whether in assessing resident lands in the city of Buffalo the name of each owner or occupant must be contained in the roll opposite the parcel owned or occupied by him.

Under the Revised Statutes (Pt. 1, chap. 13, tit. 2, art. 2, § 9 [Banks & Bros'. 9th ed. vol. 2, p. 1683]) the manner of assessment prescribed requires in the first column of the roll " the names of all the taxable inhabitants in the town or ward as the case may be," then in separate columns opposite, the quantity of the land, its value and the personal property. Non-resident lands are designated in the same roll, but separately from other assessments. (Id. § 11.) The form here prescribed must be adhered to in order to give validity to the assessment or tax title dependent upon it. ( *Whitney* v. *Thomas,* 23 N. Y. 281, 284 *et seq.; Stebbins* v. *Kay,* 123 id. 31; *Sanders* v. *Downs,* 141 id. 422.) It is clear, therefore, that the assessments upon which the tax titles of the defendant rest are void unless the charter of the city of Buffalo authorizes a different method than prevails generally throughout the State.

In this case the assessments upon which the sales were made were both local and for county and State purposes and ran along from 1887 to 1897, during no part of which period were the taxes paid. The charter of the city of Buffalo is Laws of 1870, chapter 519, as revised by Laws of 1891, chapter 105, but so far as these assessments are concerned the change in the revised statute (§ 138) is unimportant. Section 42 of title 2 of chapter 519 of the Laws of 1870 reads as follows: " They (the assessors) shall prepare an annual assessment roll of each ward, which shall consist of two parts; the first part shall be the assessment of the taxable lands of the ward, substantially in the form in which town assessors are required to make them, except that no distinction shall be made between the lands of

residents and non-residents, but those of both shall be assessed in form as resident lands. The second part shall contain the names, in alphabetical order, of all inhabitants of the city, corporations and associations deemed taxable in the ward upon personal estate, and opposite to such name shall be set down the amount of the personal estate assessed to them respectively."

It is obvious that the scheme intended by this enactment differs from that contained in the Revised Statutes, in that the distinction between the lands of non-resident owners and those of resident owners was done away with and all were treated as resident land, so far as the form of assessing was concerned. But in other respects the purpose was to adhere to the form applicable in town assessments, and the only departure apparently was to render effective the abrogation of the distinction referred to. Had it been intended to deviate from the mode provided in the Revised Statutes in so important a particular as omitting the name of each owner from the roll, we should expect to find a clear expression of that intention in the statute itself, instead of being left to a dubious construction of the statute. It is important in an assessment roll that the fullest opportunity be given to the individual assessed to know precisely what the assessment is of each piece of property which he may own, in order that he may keep advised of what is being done by the taxing authorities with reference to it. The right to appear before the board and review its action may be important to him, and in addition to these privileges his land may be sold for non-payment of taxes, and so it is essential that the mode long in vogue in the method of making assessments should be followed, unless the statute unmistakably has made a change. The exclusion of the owner's name from the roll is a radical departure from the Revised Statutes, for the pith of that statute is that the assessment is to the taxable inhabitant, and that furnishes the guide to each person aesiring to examine the roll.

The argument of the appellants is that under the Revised Statutes in the assessment of lands the tax becomes a personal liability against the person assessed, while the purpose of the charter of the city of Buffalo is to make it a lien on the land primarily. That is, the change involves a tax which is a lien on the land instead of a liability against the person. The plan provided in the Revised Statutes

(Vol. 2 [Banks & Bros.' 9th ed.], p. 1690 *et seq.*) is to proceed against the person, the collector possessing authority in case of non-payment to levy " by distress and sale of the goods and chattels " of the delinquent. In case of failure to enforce payment, the taxes are returned unpaid and subsequently the land may be sold as lands of non-residents. (Laws of 1855, chap. 427, § 5; *Newman* v. *Supervisors of Livingston County,* 45 N. Y. 676.) The course of procedure, therefore, seems well defined as to assessments made upon real estate and the collection of taxes pursuant to the Revised Statutes. The tax imposes a personal liability against the person assessed, but ultimately the land can be taken to meet the obligation. The point made by the appellants' counsel is that under the charter the tax is made a lien upon the land, and he argues from that premise that the land is the primary fund out of which the tax must be paid. Section 1 of title 7 of the charter, as the same is revised and re-enacted in section 106 of chapter 105 of the Laws of 1891, does make the tax from its inception a lien upon the lands assessed for the period of ten years. We do not find, however, any provision in the charter for the sale of land assessed by the tax collector. Section 77 of the revised charter (as amd. by Laws of 1896, chap. 809) provides for an action by the city comptroller for the collection of unpaid taxes, certainly assuming there is a personal liability for their payment. The succeeding section, as thus amended, makes provision for issuing warrants to collectors for unpaid taxes by the treasurer where he " has reasonable grounds for believing " that the person chargeable with the payment of the taxes " has goods and chattels liable to levy and sale for such tax." Both of these sections are meaningless unless there is a person to be sued and against whom the process is to be directed. If the land were to be assessed without any reference to the person owning or occupying it the sole remedy would be against the land itself, for the individual would not be known in the transaction. The warrants referred to are simply transcripts of the roll, and pursuant to them by sections 86 and 87, as thus amended, the collector proceeds against the person " opposite to whose name such taxes are set down." Of like effect is section 89.

When the treasurer has returned the roll the unpaid taxes against the real estate are enforced by its sale by the city comptroller in

proceedings like those authorized by the Revised Statutes (§ 107 *et seq.*). The whole scheme, therefore, is patterned after the mode which has long been embodied in the general law and to which we have already adverted.

The fact that a lien is expressly provided by the charter does not indicate any departure from the settled plan of assessments. The land of every owner may eventually be sold to meet the taxes upon it and a lien exists as effectively as the express one upon which so much is based. The land of the farmer could not be sold to pay the taxes against him unless a lien thereon existed. Even though he has parted with his title the land has still fastened to it this indebtedness, and the only relief from the burden is by payment if validly assessed. While, therefore, the charter in explicit terms makes the taxes a lien upon the land, it permits no resort to it until the remedies ordinarily available against a tax debtor have been exhausted.

In *Newell* v. *Wheeler* (48 N. Y. 486) the assessment had been made for local improvements against a person not the owner, and it was held invalid. In that case the tax was by the city charter made a lien upon the land, but the method of enforcement originally was against the person, following a rule that seems well nigh invariable.

The counsel for the appellants insists that this construction will operate to relieve non-resident lands from assessments, as the charter provides that all lands shall be assessed in form as resident land. The non-resident land must be in the same column as the other land, but there is no name opposite in the list of taxable inhabitants. The only distinction from the general law is that the lands of non-residents are placed with the other lands instead of in a separate part of the roll. In *Collins* v. *Long Island City* (132 N. Y. 321), in which city there was a like provision as to the placing of the lands of non-residents on the roll, the court, in commenting upon the method of complying with this provision, say (at p. 325): "If the land is vacant and owned by a non-resident of the city, the first column of the roll should state, instead of the name of the owner, such a designation or description of the land as the statute requires."

But the question has been settled by authority in *Zink* v. *McManus* (49 Hun, 583). The plaintiff, who was the owner of the land, was a resident of the city of Buffalo, and the premises were

in the actual possession of his tenant. The assessment was to a stranger, and the court held it was void, being in contravention of the provisions of the Revised Statutes referred to. This case was affirmed in the Court of Appeals (121 N. Y. 259) upon another ground, the court declining to follow the General Term on the point stated because the owner had procured the land to be assessed to the stranger, whose name appeared on the roll. It gave no opinion, however, either for or against the view taken by the General Term upon the question involved in this appeal. The counsel for the appellant relies upon *Collins* v. *Long Island City* (*supra*). In that case the lands of non-residents were not to be separated from other assessments, but the owner's name was inserted among the list of the taxable inhabitants, and this was claimed to vitiate the assessment. The court held that the insertion of the name was surplusage and that the assessment was valid. In the present case, if our interpretation of the statute is correct, it was imperatively necessary that in the first column the name of each taxable inhabitant should appear. The requirement was disregarded and it has been held to be a jurisdictional defect. In the *Collins* case the land was placed in the proper column and the fact that the owner's name was also in the list did not operate to deceive him but rather to give him information.

. The judgment should be affirmed, with costs to the respondents.

McLENNAN, HISCOCK and DAVY, JJ., concurred; WILLIAMS, J. dissented.

Judgment affirmed, with costs.