(55 Misc. Rep. 425.)

PEOPLE v. GOLDING et al. (two cases).

(Supreme Court, Special Term, Hamilton County.   July, 1907.)

1. EJECTMENT—AFTER-ACQUIRED TITLE—SUPPLEMENTAL ANSWER.

In ejectment by one claiming under a Comptroller's tax deed against a defendant who, claiming under a conveyance from another defendant executed after the commencement of the action, was permitted to set up by supplemental answer the title thus acquired under an order, unreversed, imposing costs upon him, which were paid to and accepted by the plaintiff's attorneys. *Held*, that the allegations of the supplemental answer were properly within the issue, allowing proof thereof to be received at the trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 17, Ejectment, § 231.]

2. TAXATION—DEFECTS—ASSESSMENT.

Failure of assessors to verify the assessment roll made by the town assessors is a jurisdictional defect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 747.]

3. SAME.

Where land is assessed as that of nonresidents, and is an entire tract, which has not been subdivided, failure to describe a part of the tract not liable to taxation, and failure to designate unoccupied parts of the tract where part of it is occupied, are jurisdictional defects.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 728.]

4. SAME—EXTENSION OF TAX.

Failure of the supervisors to extend the tax after preparation of the assessment roll is a jurisdictional defect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 736.]

5. SAME—SALE EN MASSE.

The sale en masse of lands assessed as nonresident land, in which various persons have different interests, without specifying the owner or interest, is a jurisdictional defect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1354.]

6. SAME—DEFECTIVE DESCRIPTIONS.

Sale of lands by the Comptroller by descriptions other than those returned to him by the county treasurer is a jurisdictional defect.

7. SAME—COMPTROLLER'S DEED.

Failure of the Comptroller's deed to indicate the location of lands excepted from the general description of the land sold is a jurisdictional defect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, §§ 1519–1521.]

8. SAME—SALE—PREVIOUS PAYMENT OF TAX.

Where one tax has been paid on lands, the sale for double assessment is a jurisdictional defect.

9. SAME.

The sale of more lands than are covered by the assessment is a jurisdictional defect.

10. SAME—INDEFINITE NOTICE OF SALE.

Where the lands are so indefinitely described in the notice of sale as to be incapable of identification, it is a jurisdictional defect.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1339.]

11. SAME—DEED WITHOUT SALE.

Where the lands are withdrawn by the Comptroller from sale on a statement that they belong to the state, a conveyance given without any actual sale is a nullity.

**12. SAME—DEED—EVIDENCE OF TITLE.**

Where lands have been withdrawn by the Comptroller from sale on the statement that they belong to the state, and thereafter a conveyance is given of such lands, the deed is not conclusive evidence of plaintiff's title under Laws 1885, p. 758, c. 448, and Laws 1896, p. 841, c. 908, § 132.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1556.]

**13. SAME—SALE TO STATE—LIMITATIONS.**

Laws 1885, p. 758, c. 448, substantially re-enacted by Laws 1896, p. 841, c. 908, § 132, makes a conveyance by the Comptroller on sale to the state, after it has been recorded for two years, conclusive evidence of the regularity of all proceedings six months after the passage of the act without notice to the owner or occupant. *Held* not effective as a statute of limitations, as the remedy it affords by an action to cancel the deeds is not applicable to jurisdictional defects, nor available to the owner on sale to the state, since no action is permitted against the state.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1557.]

**14. SAME—RETROSPECTIVE LEGISLATION.**

Laws 1896, p. 841, c. 908, § 132, making conveyances executed by the Comptroller, after having been recorded for two years, conclusive evidence of the regularity of proceedings, is not effective as a statute of limitations as to conveyances recorded before its passage.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1557.]

**15. SAME.**

Laws 1896, p. 841, c. 908, § 132, making conveyances by the Comptroller conclusive after two years, is repugnant to the Constitution, as giving no time within which an owner's rights against the state may be asserted, except as to the specific grounds for which it provides for canceling taxes and sales, which remedy is not given to the owner, but only to the purchaser.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Taxation, § 1557.]

**16. TENANCY IN COMMON—OCCUPATION BY CO-TENANT.**

A tenant cannot by injunction exclude his co-tenant from occupation of the lands held in common.

Actions by the people against John N. Golding and Mabel Golding and against John N. Golding and William B. Benedict. Complaints dismissed.

Lewis & McKay, for the People.

Frank L. Bell, for defendants.

VAN KIRK, J. Action No. 1 is an action in ejectment brought to recover possession of a piece of land bordering on the west shore of Raquette Lake northerly of Brown's Tract Inlet. This piece of land is part of that which is in the case called the 7,000-acre tract, being a tract in the northwest portion of township 40, Totten & Crossfield's Purchase. The plaintiff claims title under three tax deeds, viz.: First, a deed under the tax sale for 1871, dated February 1, 1875, and recorded May 30, 1877; second, a deed under the tax sale for 1877, dated August 10, 1881, and recorded June 12, 1882; third, a deed under the tax sale for 1881, dated August 31, 1884, and recorded April 9, 1887. The 1871 tax sale was for taxes assessed for the years 1861 to 1865, inclusive; the 1877 tax sale, for the years 1867, 1868, and 1869; the 1881 tax sale, for the years 1871, 1872, and 1873.

Township 40 was conveyed by the state to Robert G. Livingston, August 14, 1786, reserving to the state, however, 5 acres out of each 100 acres (amounting to 1,260 acres) for highway purposes. The

township is stated to contain 25,200 acres. ·In 1851 this Livingston title
went to Abner Benedict. On July 21, 1852, Abner Benedict still owned
an undivided one-half interest of the 7,000-acre tract, and Beecher and
Keith the other undivided half. On said date he conveyed to Mead,
Sackett, Hay, and Platt an undivided one-fifth interest in said tract,
reserving a one undivided four-fifths part thereof, which was a reserva-
tion of the one-half interest then belonging to Beecher and Keith and
a three-tenths interest (2,100 acres) to himself. There is a dispute
between the parties as to the lands and interests conveyed in the said
deed of July 21, 1852; and it is not necessary to determine the exact
interest which Abner Benedict had in the said 7,000-acre tract, further
than to say that at the time of his death he did own an undivided in-
terest in said tract, and therefore was, at the time of his death, a ten-
ant in common with the other owners in the premises in question in
this action.

The plaintiff claims that, at the time of the beginning of the action,
the defendants had no interest in the ground title to said piece of land,
and therefore, under the decision in the Ladew Case, could not ques-
tion the validity of the state's title under the aforesaid tax deeds. On
January 8, 1904, the heirs at law of Abner Benedict conveyed to the
defendant Golding an undivided interest in the premises in question;
and the defendant Golding is now the owner of said undivided inter-
est coming from Abner Benedict. The defendant Mabel Golding is
the wife of the defendant John N. Golding. By an amended supple-
mental answer, permitted by an order, still unreversed, of the court at
Special Term, the defendants have set up their title under the said deed
of January 8, 1904. This action was begun in 1901. It is an action
at law. The title procured by the defendants in 1904 was subsequent
to the beginning of the action. The plaintiff claims that the said deed,
though pleaded, is not competent or proper evidence in the case, and
that the case must be decided upon the facts as they existed at the time
of the beginning of the action. The order allowing the service of the
amended supplemental answer imposed costs, which costs have been
paid and received by the plaintiff's attorneys. The defendant has ob-
tained leave to serve the pleading from a court which has imposed
terms, and the terms have been accepted by the plaintiff. The matters,
therefore, set forth in the supplemental answer, are properly within
the issue. Bennett v. Lawrence, 71 App. Div. 413, 75 N. Y. Supp.
902; Knickerbocker Life Ins. Co. v. Nelson, 78 N. Y. 137; Smith v.
Rathbun, 75 N. Y. 122. The defendants, therefore, are in a position
to contest the title of the state under the said tax deeds.

The evidence shows many serious defects in the proceedings, both in
making the assessments and in making the sales, which render the sales
void. These same tax deeds have been under review in the courts a
number of times, and particularly in the cases of People of the State
of New York v. Joseph H. Ladew, tried before Arthur L. Andrews,
Esq., referee (on appeal, 108 App. Div. 356, 95 N. Y. Supp. 1151), and
of People of the State of New York v. Horace Inman and of People
of the State of New York v. Hasbrouck, tried before John L. Hen-
ning, Esq., as referee.

The assessment roll for township 40 for the year 1861 is as follows:

"A list and description of resident lands assessed for taxes in the town of Long Lake in the year of our Lord one thousand eight hundred and sixty-one, Totten & Crossfield's Purchase:

| Names. | Township. | Lot. | Acres. | Val. | Tax. | Militia. |
|---|---|---|---|---|---|---|
| Wood, Josiah, lying on a point south of Indian Point on the opposite side of Raquette Lake | 40 | .... | 100 | 150 | 3.50 | .... |
| Kellogg, Cyrus H., being on the Carthage road on the north side of Raquette Lake on the north line of Township 40, 50......... | 40 | .... | 50 | 200 | 4.00 | .... |

"Township No. 40, not allotted, and bounded as follows: northeasterly by township No. 39, easterly by township No. 35, southerly by township.No. 6, and westerly by township Nos. 5 and 41, containing 17,334 acres, valued at sixty cents per acre."

The assessment-roll for township 40 for the year 1862 is as follows:

"A list and description of resident lands assessed for taxes in the town of Long Lake in the year of our Lord one thousand eight hundred and sixty-two, Totten & Crossfield's Purchase:

| Names. | Township. | Lots. | Acres. | Value. |
|---|---|---|---|---|
| Plumley, John ............................................... | 40 | ... | 25 | 50 |
| Wood, Josiah ............................................... | 40 | ... | 100 | 150 |

"Township No. 40, not allotted, and bounded as follows: northerly by township No. 39, easterly by township No. 35, southerly by township No. 6, westerly by township Nos. 5 and 41, contains 17,209 acres and valued at sixty cents per acre."

The assessment rolls for 1861, 1862, and 1865 are in evidence, and the returns of the county treasurer for each of the years. The plaintiff claims that "the assessment rolls are all substantially alike," and the returns of the county treasurer conform, in description of lands assessed, to the assessment rolls.

The assessors, in making out the assessment roll, have failed to follow the statute. They have failed to verify the roll as required. The verification in March of the roll for 1861 could not be in compliance with the statute, as the time for making the verification had not arrived. The assessors are required to ascertain the taxable property in their town between the 1st day of May and the 1st day of July, and on the third Tuesday of August are required to meet and hear complaints and review and correct their roll. The roll for 1862 has no verification. In Westfall v. Preston, 49 N. Y. 349, 354, 355, it is held that an affidavit made on the 29th day of July was a nullity; and, the defect appearing upon the face of the paper, it conferred no jurisdiction upon the board of supervisors to impose a tax upon persons or property named therein. Until the assessment has the sanction of the assessors' oath, it has no validity as an assessment, and it cannot form the basis of taxation. People v. Suffern, 68 N. Y. 326.

During the years for which the 1871 tax sale was had various persons owned interests in lands and pieces of lands in the said township, and various pieces were occupied. On the tax roll of 1861 resident lands were assessed to Josiah Wood and Cyrus H. Kellogg. At the same time the entire township by boundaries is assessed as lands of nonresidents; the said pieces assessed as resident land being in

no wise excepted by description or by any reference or limitation allowing the lands of residents to be distinguished, or separated from, the so-called nonresident lands. The statute provides that, if the lands to be assessed as lands of nonresidents be a whole tract not subdivided, and a part only is liable to taxation, that part, or the part not liable, must be particularly described. This provision of the statute is not complied with, either in the assessment rolls or in the Comptroller's deed. It is further provided by statute that, if any part of such tract be occupied by a resident of the town, the assessors shall except such part from the assessment of the whole tract. If the assessors cannot designate such unoccupied parts, the supervisor, on notice from the assessors, must cause a survey and maps to be made to identify such parts. This provision of the statute is not complied with, either in the assessment rolls or in the Comptroller's deed. The provisions of the statute must be adhered to in order to give validity to the assessment or a tax title dependent upon it. Cottle v. Cary, 73 App. Div. 54, 76 N. Y. Supp. 580, affirmed 173 N. Y. 624, 66 N. E. 1106.

The proof shows that, during some of the years at least for which the assessments included in the tax sale of 1871 were made, John E. Plumley actually occupied a part of the Benedict property at the request of Benedict. (His title has since been held good in the Hasbrouck Case by Referee Henning.) The lands of Benedict, at least that part occupied by Plumley, should have been assessed to the occupant, who, the evidence shows, was during this time a resident of the town, and in 1862 was actually assessed for 40 acres in the township. The assessment of all of these lands as lands of nonresidents was void. Stewart v. Crysler, 100 N. Y. 383, 384, 3 N. E. 471.

It does not appear that the taxes upon the land of residents were unpaid for the year 1861. The description of the township is put in by naming the adjoining townships; then the township is said to contain 17,334 acres, valued at 60 cents per acre. The entire township contained about 25,200 acres, 1,260 acres of which were reserved to the state, but neither in the assessment nor in the notice of sale excepted or in any manner mentioned. The surface of Raquette Lake is about 4,800 acres. The lands under water are excepted by statute, but no mention is made of such exception by the assessors. Thus the lands or the interest in lands owned by a person was made subject to a tax upon lands which were not subject to taxation. The assessment, not excepting the said lands under water or the 1,260 acres reserved to the state, was a nullity; and a sale thereunder would pass no title to a purchaser. Rich v. Braxton, 158 U. S. 375, 15 Sup. Ct. 1006, 39 L. Ed. 1022; People ex rel. Barnard v. Wemple, 117 N. Y. 85, 22 N. E. 761.

The tax was never extended by the board of supervisors. This rendered the roll and the warrant fatally defective. A return of nonpayment of taxes so levied conferred no authority upon the Comptroller to sell the lands. People v. Hagadorn, 104 N. Y. 516, 10 N. E. 891, approved in Matter of Adler & Co., 174 N. Y. 294, 66 N. E. 929.

This may be cured by Laws 1893, p. 833, c. 415.

In 1861 the tax was returned upon nonresident lands as 17,334 acres,

in 1862 as 17,209 acres, and in 1863, 1864, and 1865 as 17,039 acres.
In 1871 the Comptroller sold 17,334 acres for the taxes of 1861, 1862,
1863, 1864, and 1865, thus selling, on account of the aggregate taxes
for five years, more acres than there were taxes against for four out
of the five years. In this act the Comptroller violated chapter 427, §
44, of the Laws of 1855. These lands were sold as one undivided piece,
but without any description which would allow a purchaser to dis-
tinguish the 17,334 acres from other portions of the township. Though
various persons had different interests in the lands assessed as nonresi-
dent lands, there was no specification of the owner or the interest, but
all of the interests and pieces were sold en masse. The evidence shows
that, during each of the years covered by the 1871 tax sale, Mark H.
Beecher owned an undivided one-quarter interest in the 7,000-acre
tract, Renil Keith owned a one-quarter interest in said tract, Abner
Benedict owned an undivided three-tenths interest, and Mead, Sack-
ett, Hay, and Platt owned an undivided one-fifth interest. Such a
sale was void. "Each interest or lot must be separately advertised and
sold for the payment of that tax only for which it is liable; otherwise,
the whole sale will be void." Black, Tax Titles (2d Ed.) § 260. Again
(section 228): "A tax sale, then, is invalid for every purpose unless
the property was at the time liable for all the taxes for which it was
sold."

This 7,000-acre tract was bounded on the west and north by the
west and north line of the townships, on the south by Brown's Tract
Inlet, on the east in part by Raquette Lake, and was so bounded and
identified that the tract might have been described with reasonable
certainty by the assessors and in the descriptions for the tax sale. The
Comptroller has sold these lands by descriptions other than those re-
turned to him by the county treasurer. This by statute he is forbid-
den to do.

If, upon examination, the lands are "imperfectly described," the
Comptroller must reject and return to the county treasurer the taxes.
This he did for some years, but not all, although the several failures
to comply with the statute above specified appeared upon the face of
the several returns of the county treasurer made to the Comptroller.
As required by statute, the Comptroller did reject the tax of 1867 be-
cause of imperfect description; also the tax of 1871 because the de-
scription is erroneous; also the tax of 1872 for a like reason. There
was never any reassessment or return thereof to the Comptroller from
the county treasurer, yet the lands were sold for the taxes of those
three years, with other years. The title of the owner was not thereby
divested. Ne-ha-sa-ne Park Ass'n v. Lloyd, 167 N. Y. 431, 437, 60
N. E. 741.

The tax deed of 1875, following the 1871 sale, between Nelson H.
Hopkins, the Comptroller of the state of New York, the first party,
and the people of the state of New York, the second party, conveys
"the following tracts, pieces, or parcels of land situate in the county of
Hamilton, in the Totten & Crossfield's Purchase, township forty (40)
—all that remains after excepting the following pieces and parcels,"
viz.: First, 50 acres, more or less, on the westerly side of Raquette
Lake, described by metes and bounds; second, 75 acres on the easterly

shore of Raquette Lake, known as the "Josiah F. Wood place"; third, "two thousand (2,000) acres undivided in all that remains of the township after excepting the fifty (50) acre and seventy-five (75) acre parcels above described, redeemed from the 1871 tax sale by E. C. Platt, of White Plains, Westchester county, New York"; fourth, all of 30 acres, more or less, being the easterly end of Indian Point; fifth, an undivided one-half of 7,000 acres in the northwesterly part of the township—there being conveyed 12,219 acres, more or less. And the deed contains these words:

"Doth grant, bargain, sell, and release to the said party of the second part, and to their grantees and assigns, forever, the said pieces and parcels of land above described, with the hereditaments, appurtenances to the same belonging, to be located and laid out, however, by and at the expense of the party of the second part."

There is nothing in the deed indicating where the said undivided 2,000 acres excepted is located, except that it does not include the 50 acres and the 75 acres redeemed by Platt. There is no exception of the lands under water, or of the 1,260 acres reserved to the state. The plaintiff says these exceptions are in fact in the balance of the township not conveyed in this deed. In tax deed dated 1884 there are reserved 9,550 acres "covered by water." Using these figures, we have the following, under this deed of 1875:

|                              | Acres  |
|------------------------------|-------:|
| Lands conveyed               | 12,219 |
| Lands reserved under water   | 9,550  |
| Lands reserved to state      | 1,260  |
| Lands reserved in deed       | 50     |
| Lands reserved in deed       | 75     |
| Lands reserved in deed       | 2,000  |
| Lands reserved in deed       | 30     |
| Lands reserved in deed       | 3,500  |
|                              | 28,684 |

—while there are but 25,600 acres in the entire township. One cannot take the deed of 1875 and determine from the description therein the part of the said township 40 intended therein to be conveyed. From this deed it could not be said that the state has shown title to the interest of Abner Benedict or of these defendants in the piece of land in question. There were such defects in the proceedings of the assessors, the board of supervisors, and the Comptroller that the sale of 1871 and the succeeding conveyance were void.

There are like defects in the proceedings leading up to the tax sales of 1877 and 1881. The deed of August 10, 1881 (following the 1877 sale), between J. W. Wadsworth, Comptroller, the first party, and the people of the state of New York, the second party, conveys the land situate in the county of Hamilton, Totten & Crossfield's Purchase, township No. 40, 13,344 acres more or less (1,100 acres more than was conveyed in the 1875 deed), being all that remains of the township after excepting therefrom 6,001 acres covered by water, and the gospel, school, and literature lands. Then follows the exception of the 50-acre piece, a 75-acre piece, a 30-acre piece, a 40-acre piece, and an undivided one-half interest in the 7,000-acre piece.

The deed of October 31, 1884 (following the 1881 sale), between Alfred C. Chapin, Comptroller, the first party, and the people of the state of New York, the second party, conveys lands in Hamilton county, Totten & Crossfield's Purchase, township 40, 11,615 acres, more or less, being all that remains of the township after excepting therefrom 9,550 acres thereof more or less covered by water. Then follows an exception of a 50-acre piece, a 75-acre piece, another 50-acre piece, a 40-acre piece, a 160-acre piece, a second 160-acre piece, an undivided one-half interest in the 7,000-acre piece, and a 20-acre piece. The one-half interest in the 7,000-acre piece reserved in the two latter deeds is the interest of Beecher and Keith, so that these two deeds purport to convey the interest of Abner Benedict in the said 7,000-acre piece. But no actual sale preceded these two deeds; the land having been withdrawn from the sale on the statement of the Comptroller that the state already owned the land. The description, however, and the reservations vary materially from the description in the deed which followed the 1871 sale, under which the state then claimed its title. These tax deeds are each of them void for indefiniteness of description. The descriptions do not afford the means of identification. They would probably mislead the owner. Black, Tax Titles (2d Ed.) par. 112; Underhill v. Keirns, 54 App. Div. 214, 66 N. Y. Supp. 573, affirmed 170 N. Y. 587, 63 N. E. 1122; Zink v. McManus, 121 N. Y. 259, 265, 266, 24 N. E. 467.

The conveyances themselves being void for indefiniteness of description, they could not be conclusive evidence of title in the state. The plaintiff has not, therefore, shown title to the defendants' interest in the lands in question, and the defendants cannot be ejected. If the descriptions in the deeds could be held sufficiently definite to apparently cover the defendants' interest in the premises, still, because of fatal jurisdictional and essential defects in the assessments and proceedings previous to the deeds, the action cannot be maintained.

Plaintiff claims that, although these defects existed, the deeds are conclusive evidence of plaintiff's title under the acts of 1885 and 1896. If so, it is as curative acts or as statutes of limitations. As curative acts they cannot aid the plaintiff. Many of the defects in the proceedings preceding the delivery of the deeds are jurisdictional and essential. "While the Legislature may by subsequent enactment cure defects or irregularities in proceedings to impose a tax if they relate to requirements that the Legislature might in the first instance have dispensed with, where the proceedings are so fatally defective that no title passes, it cannot by a curative act transfer the title of one person to another." Wallace v. McEchron, 176 N. Y. 429, 68 N. E. 663; Meigs v. Roberts, 162 N. Y. 378, 56 N. E. 838, 76 Am. St. Rep. 322; Cromwell v. MacLean, 123 N. Y. 474, 25 N. E. 932.

Nor are they effective as statutes of limitations. If effective as statutes of limitations, they must have given to the defendants a reasonable time within which to assert their rights against the state, after the enactment of the law and before the limitation became absolute. The Legislature cannot deprive a party, who has been ille-

gally deprived of his property, of access to the courts for relief. Gilman v. Tucker, 128 N. Y. 190, 202, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464.

. The plaintiff claims that the act of 1885 (Laws 1885, p. 758, c. 448) is still operative, though practically re-enacted in the law of 1896 (Laws 1896, p. 841, c. 908, § 132). Though operative, which I doubt, the law is not effective here as a statute of limitations which makes conveyances heretofore executed by the Comptroller, after having been recorded two years, conclusive evidence of the regularity of all proceedings six months after the passage of the act, without any notice to the owner and occupant. An application for cancellation of the tax sales and conveyances is only allowed (1) because the taxes were paid; (2) because the town had no legal right to assess the lands. There is no such allowance because of any jurisdictional defects such as exist in this case as to each of the sales. The state having been the purchaser, and no action being permitted by the act against the state, which without specific permission cannot be sued by a citizen (Sanders v. Saxton, 182 N. Y. 477, 75 N. E. 529, 1 L. R. A. [N. S.] 727, 108 Am. St. Rep. 826), there was not a day within which defendants could have asserted their rights as against the void sales and deeds. The act of 1885, therefore, cannot have the effect of a statute of limitations as to any of the sales in question.

Under the decision in Wallace v. McEchron, the law of 1896 is not effective as a statute of limitations here. The conveyances in this case were all recorded prior to the act of 1896, which as to them, therefore, is retrospective. The act provides that all such conveyances and the taxes and sales on which they are based shall be subject to cancellation by reason (1) of the payment of the taxes, or (2) of the levying of the tax by the town having no legal right, or (3) "of any defect in the proceedings affecting the jurisdiction on constitutional grounds." A defect, not included in (1) or (2), rendering the proceedings, sale, or conveyance void on other than constitutional grounds, is not included in this enabling part of the act; and as to such the act cannot be effective as a statute of limitations, because it gives no time within which the defendants might have asserted their rights against the state. It becomes an important matter to determine which of the existing defects are jurisdictional, affecting the proceedings other than on constitutional grounds.

The taxing of lands and their sale for nonpayment of taxes is fixed by the statute; and the statute, except in nonessentials, must be complied with in all its parts. May v. Traphagen, 139 N. Y. 481, 34 N. E. 1064; Sanders v. Downs, 141 N. Y. 422, 36 N. E. 391; Marx v. Hanthorn, 148 U. S. 180, 13 Sup. Ct. 508, 37 L. Ed. 410; Clason v. Baldwin, 152 N. Y. 210, 46 N. E. 322. Original jurisdiction is acquired by the proper preparation and completion of the tax roll by the town assessors, so that it would give the board of supervisors jurisdiction to extend and levy the tax. Any defect in this proceeding of the assessors, which failed to protect the rights of the owner or occupant (Westfall v. Preston, 49 N. Y. 353), would be a jurisdictional defect upon constitutional grounds. A failure to comply

with the statutes providing to these ends would not be taking property by due process of law. Due process of law requires that a man shall be properly brought into court and shall have an opportunity to be heard. In matters of collecting taxes, this means that the assessors shall acquire jurisdiction of the real property assessed, and a hearing, or an opportunity for a hearing, shall be had before them by the owner or occupant. People v. Supervisors, 70 N. Y. 228; Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; People v. Henion, 64 Hun, 475, 19 N. Y. Supp. 488.

Subsequent to the proceedings by the assessors, the statute required that the board of supervisors must fix the tax rate, extend the tax, issue the warrant for collection, and deliver the tax roll and warrant to the town collector. The town collector must return the original assessment roll and his account showing the unpaid taxes to the county treasurer, who, having found the account of unpaid taxes a true transcript of the original assessment roll, must add his certificate that he has examined the account and make his return to the Comptroller. The Comptroller must examine every account of arrears of taxes on lands of nonresidents received from the county treasurer, and reject all taxes, entered in that account, found to be charged upon lands imperfectly described, and shall annually, on or about September 1st, transmit to each county treasurer a transcript of the taxes of the preceding year in each tax district of his county which shall have been rejected for any cause, in order that they may again be included in the tax levy. Defects in the procedure, after the preparation of the assessment roll, which are essential under the law as it stood, which are of the substance of the procedure designed for the protection of the taxpayer and the preservation of his rights, are jurisdictional defects (not curable irregularities), and will avoid a sale and render the conveyance a nullity, although they are not defects affecting the jurisdiction on constitutional grounds.

In Wallace v. McEchron, the defect was a mistake in the report of the Comptroller as to an unpaid tax upon the property assessed. The Comptroller was required by statute to make a report of the unpaid taxes, and his failure to make the report correctly was the essential defect which the court held was not a defect on constitutional grounds. The Comptroller made the report, but omitted a tax of $1.17. The tax was paid and the lands thereafter were sold for the tax of $1.17; and the Court of Appeals held that this was a defect which rendered the deed and sale void, but was not a defect coming within the three classes of defects concerning which the act gave the right to apply to the court for a cancellation of the sale or deed under the act of 1896.

Some of the defects which rendered the sales and conveyances in this case void, but not on constitutional grounds, are as follows: The Comptroller, after an examination of the account of arrears of taxes on the lands in question, rejected those taxes for some of the years covered by each of the sales of 1877 and 1881. No subsequent proceedings were taken for a reassessment as provided by statute, but thereafter whatever was done, which is interpreted by the plaintiff

as amounting to a sale in those two years, was done upon the accounts which the Comptroller rejected; and, having rejected them, he had no accounts for arrears of taxes upon nonresident lands upon which he could act. The lands assessed as lands of nonresidents were in a whole tract not subdivided, a part of which only was liable for taxation. Neither the part liable nor the part not liable was particularly described. A part of this undivided tract was occupied by a resident of the town. Such part was not excepted from the whole tract. No survey or map was made to identify such parts. There were parts of the unallotted townships that were exempt by statute from taxation. Neither the part exempt nor the part not exempt was described, either in the return of the county treasurer or the notice of sale. Each of the returns of the county treasurer for the years in question was on its face defective and erroneous, because it showed taxes charged upon lands imperfectly described. The taxes for each year should have been rejected by the Comptroller under the statute. The evidence and the returns of the county treasurer show that there was a double assessment as to a part of the lands sold in each one of the years covered by the sales of 1871, 1877, and 1881. One part of this double assessment was paid, and thereafter the sale of the lands of Benedict was had. Tax Law, Laws 1896, p. 830, c. 908, art. 5, § 102. The Comptroller changed the description from that returned by the county treasurer and sold other lands and interests therein than those described in the assessment roll. He sold the lands en masse. The Comptroller sold more lands than were covered by the assessment in some of the years covered by each of the sales. The descriptions in the notices of sales were so indefinite as not to identify the lands or interests advertised to be sold. As to these defects, and others stated in the findings, the act of 1896 is not effective as a statute of limitations to protect the title as to these void conveyances.

There is another reason why I think the act is not effective to that end. Benedict and the defendants are the owners against whose title the hostile sales were made. The state was the purchaser. The permission to apply for cancellation of the tax is not given to such owner, but to the purchaser under a sale (People ex rel. Millard v. Roberts, 151 N. Y. 540, 45 N. E. 941) and, the state having been the purchaser, an action cannot be maintained by Benedict or his grantees against the state to recover the premises. Sanders v. Saxton, 182 N. Y. 477, 75 N. E. 529, 1 L. R. A. (N. S.) 727, 108 Am. St. Rep. 826. So it seems the owner had no remedy at any time, under either of the acts discussed, on account of any kind of defects, and neither can be a valid statute of limitations to protect the tax deeds. I have read the Turner Case, 117 N. Y. 227, 22 N. E. 1022, 15 Am. St. Rep. 498, and 145 N. Y. 451, 40 N. E. 400, and 168 U. S. 90, 18 Sup. Ct. 38, 42 L. Ed. 392; but the latter decision in People ex rel. Millard v. Roberts relieves from an attempt to distinguish those cases. It seems the only remedy remaining in Benedict and his grantees was to remain in, or go into, possession and defend the title. This he has done, and defendant Golding has spent consider-

.able money in erecting buildings and improving the property in question. He had and has the right to consider a void sale as no sale and the right to understand that the Legislature will not transfer to another his property without his knowledge or consent under the guise of such a void sale. Cromwell v. MacLean, 123 N. Y. 492, 25 N. E. 932.

I conclude, therefore, that in action No. 1 the complaint must be dismissed, with costs.

### Action No. 2.

The evidence was taken in the two actions above entitled, with the understanding and agreement that, so far as applicable, it should be considered as taken in both cases. The action against Golding and Benedict is brought to procure an injunction perpetually restraining the defendants from erecting a camp and docks on Big Island, in the waters of Raquette Lake, in township 40, Totten & Crossfield's Purchase. The island is easterly of the Golding camp, which is in dispute in action No. 1. This island is not included in the 7,000-acre tract; but it is sufficient in this action to consider it a part of the lands of the township, although within the limits of the lake. Abner Benedict aforesaid had, at the time of his death, an undivided interest (apparently a one-fifth interest) in said island. Prior to the beginning of this action, and on January 8, 1904, the defendant Golding received a conveyance of the interest of which said Abner Benedict died seised; and the two defendants, at the time the action was begun, owned all of the said Benedict interest in the said island. The defendants are therefore tenants in common with other owners in the island, and therefore they cannot be excluded from occupation. The discussion of the title hereinabove had is applicable to this case, and the complaint must be dismissed.

Judgment accordingly.