## MacGREGOR v. JOHNSON–COWDIN–EMMERICH, Inc.

## NEW YORK TRUST CO. v. SALEMBIER et al.

### No. 253.

Circuit Court of Appeals, Second Circuit.
March 3, 1930.

White & Case, of New York City (Carlos L. Israels and Jesse E. Waid, both of New York City, of counsel), for appellant.

Hughes, Schurman & Dwight and Herkimer & Weis, all of New York City (Walter M. Weis and Ralph S. Harris, both of New York City, and Ernest L. Wilkinson, of Flushing, N. Y., of counsel), for appellees.

Before L. HAND and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The defendant is a New York corporation, having its principal place of business in the borough of Manhattan, but owning a mill in the borough of the Bronx which was covered by a mortgage to the appellant, in trust for a group of bondholders. On April 22, 1927, the plaintiff before judgment filed a creditor's bill against it, and upon its consent the court appointed receivers. They entered upon the mill, and remained in possession until June 11, 1929, when they abandoned it by leave of court. The city of New York levied taxes upon the mill for the years 1926, 1927, 1928

and 1929, which the receivers refused to pay. On June 30, 1928, the mortgagee got leave to foreclose, the court directing that the receivership be extended for the benefit of the mortgage. Upon appeal this provision was struck out, and the foreclosure proceeded with the mortgagee out of possession, either individually or by receiver. The District Court refused to compel the receivers to pay the taxes, and the mortgagee appeals. His theory is that taxes on realty create a personal obligation, having priority in receivership to other claims, and that the assets should be marshalled to exonerate the mill, or that he be allowed to anticipate his claim in subrogation. As to those taxes accruing after the receivers' entry, he argues that taxes are in any case an expense of occupation, with which the receivers should be charged.

Section six of the New York Tax Law (Consol. Laws, c. 60) assesses all real and personal property within the state, the personal property of a corporation in the tax district which is its principal place of business, the realty in that of its situs (section 11); the tax district in the town or city (section 2 (4). The assessors prepare their rolls by August first and give notice of hearings (sections 36, 37). By September fifteenth they lodge the completed rolls with the city or town clerk as the case may be (section 39); the boards of supervisors before February first extend the taxes, affix their warrant and deliver a copy of the roll to the city or town clerk (sections 58, 59). The collector upon receipt of the roll and warrant posts public notice that he will receive payment at a given time and place (section 69), mailing notices to such non-resident owners of realty as advise him (section 70). After thirty days the collector must call upon each resident for payment (resident owners of realty being made personally liable), and may distrain upon default (section 71); but there is no provision for any action at law. Upon the expiration of his warrant the collector makes return to the county treasurer as to what he cannot collect out of the personal property (section 82), and in the case of real property the amount with collection charges constitutes a lien (section 89), to be enforced by sale through the county treasurer under article seven. These sections apply to cities and towns so far as they do not conflict with local law (section 95). We understand section 299, which authorizes supplementary proceedings after distress, to be limited to cases where the collector might originally distrain.

Under the New York charter (Laws N. Y. 1901, c. 466 as amended) the assessment books are to be prepared for each borough by October first, and to be kept open for reassessment, in the case of realty until November sixteenth, and as to personalty till December first; after which the assessors prepare the rolls for transmission to the board of aldermen (section 892 as amended by Laws N. Y. 1911, c. 455), which levies the tax (§ 907 as amended by Laws N. Y. 1911, c. 455, and § 910 as amended by Laws N. Y. 1913, c. 680), and delivers it with its warrant to the receiver of taxes (section 911 as amended by Laws N. Y. 1911, c. 455). He gives public notice that they are due, and those levied on realty become liens, one-half on May first, the balance on November first (section 914 as amended by Laws N. Y. 1916, c. 17). As to personal taxes alone the receiver may distrain (section 926 as amended by Laws N. Y. 1915, c. 600), and sue at law (section 836). The charter gives no remedy for the collection of taxes on the realty, except that of sale under title five of chapter 17. Although section 913 requires the receiver to collect all taxes "from the several individuals and corporations assessed * * * in the manner hereinafter prescribed," there is no "manner thereinafter prescribed" for enforcing taxes on the realty as a personal liability.

Thus it is clear that under the general tax law the owner is liable for taxes on his realty, if a resident of the same city or town, and equally clear that he is not, if a "non-resident." We should assume that, if the general law were applicable, the defendant was a resident, since its principal place of business was in the city of New York, where the mill also was; but in People ex rel. Moller v. O'Donnel, 183 N. Y. 9, 75 N. E. 540, the Court of Appeals construed the phrase, "tax district," as meaning a "borough" of New York City in a case which involved the validity of an individual's personal assessment. Judge Cullen suggested that possibly the same rule might not apply to a corporation, perhaps because the provision of section 894 for the change in assessment from one borough to another is given only to "persons." However, all property must be assessed by boroughs (section 892, amended by Laws N. Y. 1911, c. 455), in the case of corporations as well as of persons, for the duplicate provided for in section 893 is not the assessment roll. People ex rel. Manhattan Ins. Co. v. Wells, 91 App. Div. 44, 86 N. Y. S. 456, affirmed on opinion below.

178 N. Y. 609, 70 N. E. 1107. It would appear that consistently the borough is the tax district for a corporation as well as for an individual, even if "person" in the last two sentences of section 894 as amended by Laws N. Y. 1911, c. 455, was not intended to include all taxpayers, which is not clear. A tax against real property situated in another borough from the residence of the owner would not therefore appear to impose any personal liability; it would be assessed as "nonresident" so far as the general tax law was applicable.

■ It seems to us also that the charter provisions are "in conflict" with the general tax law, if this be not their proper interpretation. The notion of a liability which there is no means to enforce is very unreal, especially in a code which prescribes everything in such detail as the New York Charter. It is of course theoretically possible to say that the lacuna of the charter is filled by the provision of the general law, but the charter was presumably intended in this respect to be self-sufficient, and no case has held the contrary. It is in general true that the executor must pay as debts taxes on the realty (Smith v. Cornell, 111 N. Y. 554, 19 N. E. 271; In re Babcock, 115 N. Y. 450, 22 N. E. 263; In re Gill, 199 N. Y. 155, 92 N. E. 390), though only when they have been levied before the decedent's death (In re Freund, 143 App. Div. 335, 128 N. Y. S. 48; In re Appell, 199 App. Div. 580, 192 N. Y. S. 136, affirmed 234 N. Y. 600, 138 N. E. 462). But this is because the statute expressly so provides, and in Re Gill particularly held that it was irrelevant whether or no the tax was a personal liability. Buckhout v. N. Y., 82 App. Div. 218, 81 N. Y. S. 723, did indeed hold that such taxes created personal liabilities, but the Court of Appeals in reversing that decision (176 N. Y. 363, 68 N. E. 659), declined to pass upon the point, and the case is scarcely an authority. Cottle v. Cary, 73 App. Div. 57, 76 N. Y. S. 580, involved Buffalo lands and throws no light on the New York charter; People ex rel. Myers v. Moynahan, 130 App. Div. 46, 114 N. Y. S. 417, does not reach the point, though it contains a dictum against the liability. On the other hand, it must be owned that section 894 as amended by Laws N. Y. 1911, c. 455, by implication looks the other way, in providing that a misdescription of the ownership of realty shall not invalidate the tax; "but in such case no tax shall be collected except from the real estate so assessed." Under what provisions of the charter it could be collected otherwise we do not see. So expert a judge in such matters as Gaynor, J., thought that the liability did not exist. Lauby v. Gill, 42 Misc. Rep. 334, 86 N. Y. S. 718; Krueger v. Schlinger, 19 Misc. Rep. 221, 43 N. Y. S. 305.

All we decide is that either the taxes in suit are "non-resident," and therefore involve no personal liability in analogy with the general tax law, or that, if there was a liability, it remained in nubibus, for there was no way to enforce it except by resort to the land. For the purpose of this case either alternative will serve; the first for obvious reasons. As to the second, the mortgagee stands upon two grounds, subrogation and marshalling. If he had paid the taxes, his remedies would have been no greater than the city's, which will not answer. If the tax be regarded as primarily personal, the land being only a security, more can be said on the score of marshalling, but not enough. Assuming arguendo that the same doctrine applies to this situation as between junior and senior liens, and that equity will always require him who alone has recourse to two funds first to exhaust that which is singly encumbered—the city has no such recourse. Finally, if forgetting any established doctrines, we look to the very justice of the situation, we cannot see that the mortgagee mends his position. The law, by failing to provide any compulsion on the taxpayer to pay the tax, left it to his judgment whether to discharge the putative liability, or to leave it as a lien. It is of course true that he will in fact pay it out of his personal property if he can—he will not let the land be sold—but that is equally true though there be no liability at all. The mortgagee concedes that, if there be none, the land is the only debtor, and plainly this is so. We cannot see that a phantom liability which nobody can enforce, and which there is not even a moral duty to discharge, changes the incidence of the burden a jot, or raises any equities less ghostly than itself.

■ The taxes accruing after the receivers entered are in a different position. They could have refused to accept the mill, if they had thought the equity a burdensome asset. Having elected to enter, they took it cum onere, and the taxes, which were a condition upon their continued occupation, were as much a part of their expenses as heat, custody or current upkeep. So far as we have found, courts have universally regarded them as part of the receivers' expenses, when the question has come up. Union Trust Co. v.

Great Eastern Lumber Co., 248 F. 46, 48, 49 (C. C. A. 5); Bear River, etc., Co. v. Petoskey, 241 F. 53, 57 (C. C. A. 6); Hammond v. Carthage, etc., Co., 8 F.(2d) 35, 38 (C. C. A. 2); Wiswall v. Kunz, 173 Ill. 110, 50 N. E. 184; Gehr v. Iron Co., 174 Pa. 430, 34 A. 638; Kelley v. Collins & G. R. Co., 154 Ga. 698, 115 S. E. 67 (semble); Atkinson & Co. v. Aldrich-Clisbee Co. (D. C.) 248 F. 134. The cases are not so uniform as regards franchise taxes, but we may disregard them here. The amendment of section 64a of the Bankruptcy Act (11 USCA § 104)—assuming that that law is relevant to the case at bar—does not touch the payment of taxes accruing during the trustee's possession. Robertson v. Goree, 29 F.(2d) 261 (C. C. A. 5). It is true that in that case the occupation had resulted profitably, but that is not material. The receivers having once chosen to accept the property, the taxes were an expense of operation, regardless of the outcome. It would be a curious doctrine which allowed the general creditors to avoid them because their venture turned out badly; their representatives must consider that at the outset. Every consideration of equity requires them to bear all charges incidental to the occupation which they have enjoyed.

Decree modified in accordance with the foregoing.