## PRUDENTIAL INS. CO. OF AMERICA v. LIBERDAR HOLDING CORPORATION.

## In re THEODORE A. CRANE'S SONS CO. (two cases).

## THEODORE A. CRANE'S SONS CO. v. WILLIAMS et al.
### Nos. 54, 55.

Circuit Court of Appeals, Second Circuit.
Dec. 3, 1934.

McKenzie, Peper & McKenzie, of Brooklyn, N. Y. (Alfred C. McKenzie, of Brooklyn, N. Y., of counsel), for petitioner-appellant, Theodore A. Crane's Sons Co., holder of a mortgage on 258 Seigel street and a mortgage on 1155–1157 Seventieth street, Brooklyn, N. Y.

Greenbaum, Wolff & Ernst and Stephen Callaghan, all of New York City (Stephen Callaghan, of New York City, and Thomas A. Gaffney, of Brooklyn, N. Y., of counsel), for respondents-appellees, Herbert L. Williams, Edward McLoughlin, and Alphonso M. Dreyer, as ancillary receivers of Liberdar Holding Corporation.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On September 6, 1933, ancillary receivers of the Liberdar Holding Corporation were appointed by the United States District Court in a suit to conserve its property and business for the benefit of creditors. Prior to that date, the company had collected rents from the real estate covered by two mortgages belonging to Theodore A. Crane's Sons Company and there had been a default in payment of taxes for November, 1932, and May, 1933, as well as a default in payment of interest under each mortgage. After the appointment of the receivers they collected rents from each of the mortgaged premises.

In December, 1933, the owner of the mortgages petitioned the District Court for leave to institute foreclosure suits in the New York Supreme Court, which was granted. The petitioner also prayed that the receivers be directed to apply rents which had passed to them from Liberdar Holding Corporation as well as rents which they had collected since their appointment, or might thereafter collect toward liquidation of the unpaid taxes on the mortgaged properties and accrued interest, and also that they be directed to deliver possession of the mortgaged premises to the petitioners. The court ordered the receivers to segregate all rents collected subsequent to the filing of the petitions on December 15, 1933, after allowance of expenses of administration therefrom, but otherwise denied these applications.

In our opinion the rentals collected by Liberdar Holding Corporation prior to the equity receivership, whether or not identifiable as such, became general assets in the hands of the receivers upon which the owner of the mortgages acquired no lien. The same thing we believe to be true of rentals collected after the receivers were appointed but prior to the filing of the petitions on December 15, 1933. But these rentals, while general assets, were subject to payment of taxes that accrued during the interval between September 6, 1933, and December 15, 1933, as expenses of the receivership. Only the subsequent net rentals are applicable to the mortgages.

We recently said in Matter of McCrory Stores Corporation, 73 F.(2d) 270 that "an assignee of future rents [who has done nothing to perfect his rights] will not prevail over an execution creditor or trustee in bankruptcy. Sullivan v. Rosson, 223 N. Y. 217, 119 N. E. 405, 4 A. L. R. 1400; In re Brose (C. C. A.) 254 F. 664; In re Berdick (D. C.) 56 F.(2d) 288." We think this is true of any assignment of future rents that is less than a transfer to the assignee of outright ownership rather than of the rights of a mere security holder. Sullivan v. Rosson, 223 N. Y. 217, 119 N. E. 405, 4 A. L. R. 1400; Harris v. Taylor, 35 App. Div. 462, 54 N. Y. S. 864. In the case at bar nothing was done by the creditor to appropriate or even to make claim to any interest in the rents until it filed its petition on December 15, 1933.

It seems unlikely that mere words of assignment of future rents can entitle a mortgagee to claim rentals which have been collected by a mortgagor and mingled with its other property. Sound policy as well as every probable intention should prevent a mortgagee from interfering with the mortgagor's possession until the mortgagee takes steps to get the rentals within his control. To hold otherwise would be to impose unworkable restrictions upon industry in cases where mortgagors have been led to suppose that they might rightfully apply the rentals to their own business. The failure of the mortgagee here to claim rents prior to the time when it filed its petitions on December 15, 1933, and its practical acquiescence in their retention by the mortgagor and its receivers prevent the mortgagee from acquiring any rights in them.

It is argued that as soon as a default occurred the covenants in the mortgages entitled the mortgagee to the remainder of the rents accruing prior to December 15 after payment of the taxes due November 1, 1933, as well as to all future rents. This is supposed to result from clause 9 of the mortgages which reads as follows:

"That after any default hereunder, the mortgagee may enter and take possession of

the mortgaged premises, and let the premises, and receive all the rents, issues, and profits thereof, which are overdue, due, or to become due, and apply the same, after payment of all necessary charges and expenses, on account of the amount hereby secured, and said rents and profits are in the event of any such default hereby assigned to the mortgagee. In that event, the mortgagor, for itself, and for any subsequent owner of said premises hereby agrees to pay in advance to the mortgagee a reasonable rent for the premises occupied by it, and in default of so doing, hereby agrees that it may be dispossessed by the usual summary proceedings, and further that any tenant defaulting in the payment to the mortgagee of any rent may be likewise dispossessed. This covenant shall become effective immediately after the happening of any such default, regardless of whether or not an action has been brought to foreclose this mortgage, or whether or not possession has been taken of the mortgaged premises by the mortgagee, or whether or not a receiver has been appointed."

■ We find no indication in the New York decisions that an assignment of rents upon a default in a mortgage entitles the mortgagee to the rents and profits without taking some further steps to assert his rights. That he is not entitled to them in such an event by virtue of a mere assignment of future rents as security was held in Sullivan v. Rosson, 223 N. Y. 217, 119 N. E. 405, 4 A. L. R. 1400. See, also, Freedman's Savings & Trust Co. v. Shepherd, 127 U. S. 494, 8 S. Ct. 1250, 32 L. Ed. 163. The words "whether or not possession has been taken of the mortgaged premises by the mortgagee, or whether or not a receiver has been appointed," inserted in the mortgages here, are no more availing than the old words of simple assignment in the event of default. The mortgagee must take steps to perfect his rights, and it ought to be assumed, as it was in Freedman's Savings & Trust Co. v. Shepherd, that the provision is not self-executing and that until he asserts his claim he is content to let the mortgagor receive the earnings of the premises.

■ In MacGregor v. Johnson-Cowdin-Emmerich, Inc., 39 F.(2d) 574, we held that a receiver must pay as expenses of the receivership any taxes falling due during the period of his occupancy. Michigan v. Michigan Trust Co., 286 U. S. 334, 344, 52 S. Ct. 512, 76 L. Ed. 1136; Central Vermont Ry. Co. v. Marsch (C. C. A.) 59 F.(2d) 59; First National Bank of Houston v. Ewing (C. C. A.) 103 F. 168; Hammond v. Carthage Sulphite Pulp & Paper Co. (C. C. A.) 8 F.(2d) 35. Accordingly taxes due November 1, 1933, should be paid by the receivers from rents accruing between the date of their appointment on September 6 and December 15, 1933, when the petitions seeking to appropriate the rents were filed by the mortgagor. While it is argued that these taxes ought to be prorated and that only the proportion thereof which the above period bore to the six months of the year covered by the taxes due on November 1 should be paid by the receivers, we think that they should have declined to take over the property if they did not wish to pay the full amount of taxes falling due while it was under their management. In Atlantic Trust Co. v. Dana (C. C. A.) 128 F. 209, cited in support of prorating taxes, there was no question as to whether all or a part of the taxes payable during the term of the receivership should be paid. The entire tax was paid and the receiver was in possession of the premises during the entire year for which it was assessed. The question there was against which creditors' interests, succeeding one another during the period, (and to what extent), the tax should be charged. In these circumstances the tax was prorated. We find no decision reported where a receiver entering premises has not been required to pay all of a tax that accrued during his occupancy but, on the contrary, many that have required full payment without any prorating. See MacGregor v. Johnson-Cowdin-Emmerich, Inc., 39 F.(2d) 574, 576 (C. C. A. 2); Central Vermont Ry. Co. v. Marsch, 59 F.(2d) 59 (C. C. A. 1); McFarland v. Hurley, 286 F. 365 (C. C. A. 5); Michigan v. Michigan Trust Co., 286 U. S. 334, 52 S. Ct. 512, 76 L. Ed. 1136 (semble).

The taxes due November 1, 1933, should be paid by the receivers out of the rents accruing during the period between September 6 and December 15, 1933, and the remainder after such payment will belong to them as general assets.

■ It is sought to obtain possession of the mortgaged premises for the mortgagee by a court decree. In New York the legal title remains in the mortgagor in spite of a default. Trimm v. Marsh, 54 N. Y. 599, 604, 13 Am. Rep. 623. The state Court of Appeals has said that a mortgagee cannot obtain possession except by consent of the mortgagor, or by a decree in foreclosure, Barson v. Mulligan, 191 N. Y. 306, 84 N. E. 75, 16 L. R. A. (N. S.) 151, and that "there is no statutory authority for holding that a mortgagor in possession may be evicted  *  *  *  prior

to a sale under a judgment of foreclosure and sale." Holmes v. Gravenhorst, 263 N. Y. 148, 152, 188 N. E. 285, 286, 91 A. L. R. 1230. In dealing with an Oregon statute (Gen. Laws Or. 1843–1872, c. 4, tit. 1, § 323) providing that "a mortgage of real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without foreclosure and sale according to law," the Supreme Court held that a covenant in a mortgage requiring possession to be given to the mortgagee in the event of default was unenforceable. Teal v. Walker, 111 U. S. 242, 4 S. Ct. 420, 28 L. Ed. 415. We think that the effect of the New York Act of 1828 (2 N. Y. Rev. St. [1st Ed.] 1829, p. 312, pt. 3, c. 5, tit. 1, § 57 [now Civil Practice Act, § 991]) forbidding a mortgagee to bring ejectment for the recovery of possession of mortgaged premises in the event of default (section 991, Civil Practice Act) cannot be avoided by a contract between the parties. One Hundred and Forty-Eighth Street Realty Co., Inc., v. Conrad, 125 Misc. 142, 210 N. Y. S. 400. It is much more in accord with its spirit that the court should appoint a receiver in foreclosure or if, as in the present case, receivers have already been appointed in a suit for conservation of assets, that the court should retain possession of the property and have the rents collected for the benefit of all concerned. In this way the general creditors will not be in a position to complain of mismanagement by the mortgagee, while the latter will have its rights protected as fully as though the properties were in its own possession and under its management.

We see no reason for enforcing a covenant which gives a mortgagee possession in the event of default. The receivers are vitally interested in the amount that may be derived from the premises in suit for, should the foreclosure sale yield enough to pay the mortgage, the rents would in effect wholly inure to their benefit. Their collection of the rentals pursuant to the decree will serve the interest of all parties.

We hold (1) that the receivers are entitled to all sums in the hands of Liberdar Holding Corporation at the time they were appointed, whether derived from the mortgaged premises or otherwise; (2) that the receivers are entitled to all rentals accruing between September 6 and December 15, 1933, after paying taxes due November 1, 1933, and other expenses of operation properly allowable therefrom; (3) that the receivers should collect for the benefit of the mortgagee the rentals accruing after December 15, 1933, and hold the same while paying current taxes and expenses therefrom until the further order of the court.

The orders herein are modified in accordance with this opinion, and, except as so modified, are affirmed.