**In re HUMESTON.**

**PEIRSON et al. v. PARIS.**

No. 349.

Circuit Court of Appeals, Second Circuit.

April 6, 1936.

Merle Lewis Sheffer, of Rochester, N. Y., for appellants.

Walter A. Swan, of Rochester, N. Y., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

Humeston, the bankrupt, who had given the petitioners a mortgage on land owned by him and his wife as tenants by the entirety, was adjudicated on November 1, 1933, and Paris was appointed his trustee. Paris sold all the personalty at once and entered upon the land, leased it and collected the rents, the mortgagees doing nothing to assert their claims. It was twice sold for taxes due before November 1, 1933, and other taxes accrued upon it during the trustee's occupation which he did not pay. Finally on April 1, 1935, Paris cancelled the fire insurance which he had taken out on the house, and decided to abandon the property because there was no possible equity, and to close the estate. He prepared and filed his account as of April 30, 1935, and on May 9th, gave notice to creditors of a final meeting on May twenty-first, at which they were to consider whether to pass the account, to abandon the property and to declare a dividend. The mortgagees appeared at the meeting and filed the petition now at bar, claiming the rents collected in spite of the fact that they had not attempted to foreclose, or to get the rents sequestered in their favor, and that the mortgage did not even assign the rents. The referee dismissed this petition, and although apparently no creditor objected, refused to allow the trustee to abandon the property, and ordered him to sell it subject to all liens. The appeals are from these two orders.

We held in Re Brose, 254 F. 664, that when a mortgage contains an assignment of the rents, its effect as between a trustee in bankruptcy and a mortgagee depends upon the law of the situs. The Eighth circuit accepted this doctrine obiter, First Savings B. & T. Co. v. Stuppi, 2 F.(2d) 822, 825, though at times the question has been treated otherwise, In re Wakey, 50 F.(2d) 869, 871, 75 A.L.R. 1521 (C.C.A.7). In New York there is no doubt since Sullivan v. Rosson, 223 N.Y. 217, 119 N.E. 405, 4 A.L.R. 1400, that the mortgagee must apply to have the rents sequestered in his favor, and that they are general assets as long as he does nothing. We treated this as settled law in Re Brose, supra, in Re McCrory Stores Corporation, 73 F.(2d) 270, and in Prudential Ins. Co. v. Liberdar Holding Corporation, 74 F.(2d) 50, and we are not disposed to reopen the question. Obviously the mortgagee's position is worse when the mortgage does not assign the rents. Freedman's Savings & T. Co. v. Shepherd, 127 U.S. 494, 502, 8 S.Ct. 1250, 32 L.Ed. 163.

As to the supposed abandonment, the trustee never even proposed to abandon the property without the consent of the creditors at the final meeting; and although we are told that no creditor objected, the referee refused to consent. His order was necessary, for the court has the final word. In re Conemaugh Coal Mining Corporation (D.C.) 18 F.(2d) 682; In re Watts (D.C.) 19 F.(2d) 526. Cf. In re Wattley, 62 F.(2d) 828 (C.C.A.2). The referee was plainly right in so refusing his consent, if, as the mortgagees argue, abandonment of the equity involved abandonment of the rents on the doctrine of relation back to petition filed or to adjudication. In the first place the trustee never meant to abandon the rents and as abandonment is always a matter of intent, he

should not have been forced to abandon them in invitum when he was mistaken in the consequences of his act. Moreover, even if the trustee did abandon the equity, he did not include the rents; the two were not inseparably linked. That is supposed to follow from In re Frazin & Oppenheim, 183 F. 28, 33 L.R.A.(N.S.) 745 (C.C.A.2), but it does not. That was the case of a lease, and we said that a lease does not pass to the trustee until he so elects, but that when he does, the title relates back to adjudication. In re United Cigar Stores Co., 69 F.(2d) 513 (C.C.A.2). But the trustee cannot elect to accept a lease without becoming liable for the past rent that has been a condition upon enjoyment of the term which he has meanwhile held only through the strong arm of the court. Indeed, even when he elects to reject, he is still liable for use and occupation. A trustee's possession of an equity of redemption is not however conditional upon paying interest; he enjoys it as freely as the mortgagor did until the mortgagee moves to enter or to have the rents sequestered; and if he elects to take the equity, he does not assume the mortgage; it merely remains a lien. The judge was therefore right to deny the rents to the mortgagees.

 However, they were entitled to some relief. Such taxes as fell due during the period of the trustee's occupation were part of the expenses of that occupation and should be borne by the estate. Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136; MacGregor v. Johnson-Cowdin-Emmerich, Inc., 39 F.(2d) 574, 576 (C.C.A.2); Central Vermont R. Co. v. Marsch, 59 F.(2d) 59 (C.C.A.1); Prudential Ins. Co. v. Liberdar Holding Corporation, supra, 74 F.(2d) 50. This is not contrary to our decision in Re Kings County Real Estate Corporation (C. C.A.) 67 F.(2d) 895. There, a second mortgagee had got the rents sequestered in his favor, and we held that he might take them without deduction, leaving unpaid even those taxes which accrued during occupation. In this we followed the New York law, Ranney v. Peyser, 83 N.Y. 1. The distinction is that a mortgagee who enters or gets a sequestration order does not by that alone embark upon a venture on the land; he is merely collecting his debt. He may indeed, as we suggested, put himself in the same class as the mortgagor, if for instance he delays foreclosure so long that it is reasonable to infer that he is using the land as an independent enterprise; but the sequestration is not enough without more. When on the other hand the mortgagor's trustee continues the occupation, he necessarily means to exploit it for profit, and the gross returns must pay the running expenses. Thus taxes which became payable between November 1, 1933, and May 21, 1935, must be paid, and not only the entire face of these, but all interest and penalties accumulated upon them. It was the trustee's duty to pay them when they fell due, and the estate must suffer from his failure. The first order will therefore be modified to conform to this disposition.

 We cannot see by what warrant the mortgagees challenge the sale of the equity. It is true that they are general creditors as well as lienors, but as creditors they can have no interest in preventing a sale; and as mortgagees it cannot affect their remedies in any way whatever.

Order denying the motion for payment of rents modified as above; appeal dismissed from order directing sale.