Dime Savings Bank of Brooklyn, Appellant, v. Charles J. Beecher et al., Defendants, and United States of America, Respondent.

Jamaica Savings Bank, Appellant, v. Herman Williams et al., Defendants, and United States of America, Respondent.

Second Department, June 7, 1965.

*James J. Milligan, William A. Anzalone* and *George H. Sintenis* for Dime Savings Bank of Brooklyn, appellant.

*Stanley Beals* and *John L. A. Bond* for Jamaica Savings Bank, appellant.

*John W. Douglas, Assistant Attorney General, Joseph P. Hoey, United States Attorney (Morton Hollander, Sherman L. Cohn* and *Frederick B. Abramson* of counsel), for respondent.

*Oliver & Donnally (Martin A. Meyer, Jr.,* of counsel), for Savings Banks Association of New York State, *amicus curiæ.*

CHRIST, Acting P. J.   Each of these two actions is for the foreclosure of a mortgage on dwelling house property.   The same common problem underlies the determination of both actions, namely: Whether the two money judgments held by the United States of America against the mortgagors, respectively, have lien superiority over the later-acquired real estate tax liens of local governments; and, if so, how this superiority affects the liens of the mortgages which are being foreclosed and which were prior in time to the liens of the United States.

The claim that the subsequent local government liens have priority over the judgment liens of the United States and over the liens of the prior mortgages is based on section 1087 of the former Civil Practice Act (now Real Property Actions and Proceedings Law, § 1354, subd. 2).   This section provides

that "all taxes, assessments and water rates which are liens upon the "mortgaged premises must be paid out of the proceeds of the foreclosure sale as "expenses of the sale."

The judgments held by the United States were based on nontax claims. It is undisputed that, if the judgments were owned by a party other than the United States, the order of priority would be: (1) the local taxes and charges; (2) the mortgages; and (3) the judgments.

A kindred conflict which had been troublesome to the courts, one in which the lien of the United States was for taxes, was finally resolved in favor of the United States (*United States* v. *Buffalo Sav. Bank,* 371 U. S. 228). We must now decide whether the judgment liens of the United States for debts other than taxes are entitled to the same preference as its liens for Federal taxes.

Each of the judgments arose out of an unpaid loan made by a bank to the respective mortgagors. Since these loans were insured by the Federal Housing Administration under title I of the National Housing Act (U. S. Code, tit. 12, ch. 13), when the defaults occurred the United States made the loans good and took over the claims against the debtors. The claim on the loan to the defendants Beecher, whose property is in Suffolk County, was assigned to the United States; the United States procured its judgment on the claim in a Federal District Court; and the judgment was docketed in the office of the Clerk of the County of Suffolk upon the filing of a transcript of the judgment in that office on July 20, 1962. The judgment on the loan to the defendants Williams, whose property is in Queens County, was procured by the lender; the judgment was docketed in the office of the Clerk of the County of Queens upon the filing of a transcript of the judgment in that office on March 27, 1962; and an assignment of the judgment to the United States was filed in that office on July 24, 1962. Each judgment became a lien on the real property of the respective judgment debtors upon the docketing of the judgment in the respective County Clerk's offices, as provided in section 510 of the former Civil Practice Act (now CPLR 5203; see, also, U. S. Code, tit. 28, § 1962).

It is well settled that Federal law governs in a dispute as to priority of a lien of the United States over other competing liens (*Aquilino* v. *United States,* 363 U. S. 509), and that the Federal law includes the widely accepted rule that the first in time is the first in right, absent a statutory direction to the contrary (*United States* v. *New Britain,* 347 U. S. 81). When liens in competition with the liens of the United States are

for State or local taxes subsequent in time, it may be said that such State or local taxes are in effect taxes upon the liens of the United States (*New Brunswick* v. *United States,* 276 U. S. 547, 555; *United States* v. *City of Greenville,* 118 F. 2d 963; *Jamaica Sav. Bank* v. *Morgan,* 226 F. Supp. 668). However, viewing the situation in that light, a complementary Federal rule becomes applicable. It was first enunciated by Chief Justice MARSHALL in *McCulloch* v. *Maryland* (4 Wheat. [17 U. S.] 316, 436), and restated as follows in *West* v. *Oklahoma Tax Comm.* (334 U. S. 717, 723): "the property of the United States is immune from any form of state taxation, unless Congress expressly consents to the imposition of such liability." (See, also, *United States* v. *Allegheny County,* 322 U. S. 174, 176.)

It is our opinion that these rules do not require a holding in favor of the United States in the instant cases, because here Congress has consented to the imposition of the local taxes upon these liens of the United States. The effect of this consent is to give the subsequent liens for local taxes priority over the earlier liens of the United States. We reach this conclusion by interpretation of section 7 of the National Housing Act (U. S. Code, tit. 12, § 1706b), which is concerned with "real property acquired and held" by the Federal Housing Commissioner in connection with the payment of insurance under title I of the National Housing Act. The section reads as follows: "Taxation of real property held by Commissioner. Nothing in this subchapter shall be construed to exempt any real property acquired and held by the Commissioner in connection with the payment of insurance heretofore or hereafter granted under this subchapter from taxation by any State or political subdivision thereof, to the same extent, according to its value, as other real property is taxed."

Congress has enacted the same or similar legislation with respect to real property acquired by the Housing Commissioner under transactions pursuant to other titles of the National Housing Act (U. S. Code, tit. 12, §§ 1714, 1741, 1747, 1750e) and with respect to real property acquired by other Federal agencies, i.e.; the Home Owners' Loan Corporation (U. S. Code, tit. 12, former § 1463); the Federal National Mortgage Association (U. S. Code, tit. 12, § 1723a, subd. [c]); the Federal Home Loan Bank (U. S. Code, tit. 12, § 1433), and the Reconstruction Finance Corporation (U. S. Code, tit. 15, § 607). (Cf. similar legislation as to "Any interest held by the Administration [Small Business Administration] in property" [U. S. Code, tit. 15, § 646].)

" The congressional policy appears to have been to waive tax exemption on real property owned by government corporations whose functions were primarily financial in nature " (*Rohr Corp.* v. *San Diego County,* 362 U. S. 628, 630–631; see, also, *Reconstruction Finance Corp.* v. *Beaver County,* 328 U. S. 204).

Congress has not defined the words " real property acquired and held ", as used in any of these statutes. However, the Supreme Court of the United States has stated that, while the meaning of these words is a Federal question, " the congressional purpose can best be accomplished by application of settled state rules as to what constitutes ' real property,' so long as it is plain, as it is here, that the state rules do not effect a discrimination against the Government, or patently run counter to the terms of the Act ", and that the intent of Congress was " to integrate congressional permission to tax with established local tax assessment and collection machinery " (*Reconstruction Finance Corp.* v. *Beaver County,* 328 U. S. 204, 208–210, *supra*).

Turning to a search of whether there is any New York law on the subject, we find no governing statute and no expression of view by an appellate court. Generally, the lien of a money judgment on real property of the debtor is neither a *jus in re* nor a specific lien on the realty. It is an interest in the land different than the specific lien of a mortgage (*Lanning* v. *Carpenter,* 48 N. Y. 408; see, also, 2 Freeman, Judgments [5th ed.], § 915). However, in the light of the intent of Congress, we believe that this general principle is not so sweeping and pervasive as to preclude a judgment lien on real property being regarded as real property in and of itself for the purpose presently under discussion. Indeed, there have been appellate court pronouncements favoring elevation of such liens to a higher stature in relation to the land, to the extent necessary to accomplish justice and equity. Thus, where the realty is the sole asset from which a judgment lien or mortgage may be satisfied, it has been said that the judgment creditor and the mortgagee " stand upon the same footing as regards the real property " (*Vandemark* v. *Schoonmaker,* 9 Hun 16, 21 [in discussing an analysis in *Rohrbach* v. *Germania Fire Ins. Co.,* 62 N. Y. 47, 54]) ; and in *Vandemark* (*supra*), the interest of the judgment creditor in the land was held to be such as to entitle him to an injunction against waste, it having been shown that the premises were inadequate security and that the judgment creditor's only remedy for obtaining payment was limited to the land in question.

Three cases in other jurisdictions have been decided adversely to the United States as to lands which the United States did not own but on which it held mortgage liens. The lands lay in New Jersey, Massachusetts and Montana, respectively. All these States had statutes, similar to the above-mentioned New York statute, giving local real estate taxes a similar priority. In each case, in reliance on the pertinent above-mentioned Congressional enactments, local real estate taxes were given priority over the earlier lien of a mortgage or mortgages held by the United States. In the New Jersey case, a mortgage had been assigned to the defendant Federal Housing Commissioner (*Byram Holding Co.* v. *Bogren,* 2 N. J. Super. 331). In the case involving Massachusetts land, a mortgage held originally by the Reconstruction Finance Corporation was assigned to the Secretary of the Treasury (*United States* v. *City of Springfield,* 190 F. Supp. 817, affd. 294 F. 2d 958). Both those cases expressly followed *Reconstruction Finance Corp.* v. *Beaver County* (328 U. S. 204, *supra*). In the case concerning Montana land, two mortgages were held by the Small Business Administration (*United States* v. *Christensen,* 218 F. Supp. 722). Thus, it was held at least in *Byram* and *City of Springfield* (*supra*), that in using the term '' real property '' Congress waived the Government's exemption from State and local taxation not only as to land in which it had acquired fee title, but also as to land in which it had acquired a lesser interest — a mortgage lien. [In *Christensen* (*supra,* p. 723), the wording of the pertinent statute was different, and the waiver was expressly as to '' Any interest held by the Administration in property ''.]

It is clear that in waiving the exemption from taxation the purpose of Congress was to permit all real property, which normally shares in the burden of furnishing tax revenue for the States and local governments, to continue to do so in full measure. It is of no consequence that the nature of the Government's lien is a money judgment rather than a mortgage, such as in the *Byram, Springfield* and *Christensen* cases (*supra*). As we have already observed, New York will regard a judgment lien and a mortgage lien as '' stand[ing] upon the same footing as regards the real property '' where required by justice and equity (*Vandemark* v. *Schoonmaker,* 9 Hun 16, 21, *supra*).

The scope in number and dollars of F. H. A. guaranteed loans for home construction or improvement, with or without accompanying mortgages on the real property, has been broad and almost limitless. The construction and improvements which have resulted have imposed upon municipalities new

and increased burdens to provide adequately for necessary community services. To accord to liens for nonpayment of such loans precedence over the liens for the nonpayment of local taxes which have been increased as a result of the loans is not only inequitable but could seriously unbalance the fiscal affairs of local tax authorities, particularly in times of distress. In addition, to sanction such precedence would advance these Federal Government liens ahead of prior mortgages (the mortgages here under foreclosure) and work a further injustice against the holders of the prior mortgages. Congress, in full realization of such potential injustice, sought to prevent it by expressly incorporating section 7 in the National Housing Act.

As the court said in *City of Springfield* (190 F. Supp. 817, 819, affd. 294 F. 2d 958, *supra*): '' The purpose of the waiver * * * would be partially defeated if it did not apply where the local government had a right to make an assessment on some other taxpayer who might prove unable to pay. To afford to local governments the relief which was intended by the waiver * * * it should be interpreted as subjecting the property not merely to the assessment of the tax but to those provisions governing the establishment of tax liens and their relative priority which are an integral part of the state's tax scheme and are designed to give the local taxing authority security for the ultimate collection of the tax.'' In *Christensen* (218 F. Supp. 722, 723, *supra*, where admittedly the waiver statute involved was worded differently), even the United States agreed that the purpose of Congress ''was to place the SBA [Small Business Administration] in the position of a private party with respect to the relative priority of its mortgage liens '' and the court there added: '' By the statute itself state law is made determinative.''

Distinguishable are such cases as *United States* v. *Ringwood Iron Mines* (151 F. Supp. 421, affd. 251 F. 2d 145, cert. den. 356 U. S. 974); *United States* v. *Roessling* (280 F. 2d 933); and *United States* v. *Davis Min. Enterprises* (187 F. Supp. 911, affd. 295 F. 2d 257). No waiver of the Federal Government's tax exemption was included in the statutes governing the situations in those cases. The Federal Government's mortgage liens in the first two of these cases (*Ringwood* and *Roessling*) were acquired respectively by the General Services Administration and the Resettlement Administration. In the third case (*Davis*), the Federal Government's mortgage was never actually owned by the Reconstruction Finance Corporation; it had been in that corporation's name only as agent for the United States;

and it had been transferred by that corporation to the War Assets Administration (which was succeeded by the General Services Administration), as to which no waiver of the tax immunity was applicable.

To the foregoing we add the observation that the claim of the Federal Government is indeed anomalous. With respect to rights which the Government acquires in real property as a result of an F. H. A. insured loan, the Government says that when its rights are of the highest order, namely, where it has obtained the fee title, its position as against local taxes is the weakest, that is, the property is subject to such taxes; but that when the Government's rights in the property are of a lower order, e.g., where it has obtained only a judgment lien, its position is the strongest as against local taxes, that is, the property is exempt from such taxes.

In view of the conclusion we have reached on the basis of the question of Congressional consent, it is unnecessary to consider appellants' remaining points.

On the appeal by plaintiff the Dime Savings Bank of Brooklyn: The order of September 14, 1964 should be modified on the law as follows: (a) by striking out the fourth decretal paragraph declaring the lien of the judgment of the defendant United States of America to be prior and superior to the lien of the real estate taxes and similar charges arising subsequent to the date of the docketing of said judgment; (b) by substituting therefor a provision that the lien of said judgment is inferior to the lien for said taxes and charges; (c) by striking out the sixth decretal paragraph which denied the plaintiff's motion insofar as it sought to strike out the said defendant's answer; and (d) by substituting therefor a provision granting such motion. The order of June 24, 1964, made upon reargument, should be modified accordingly. As so modified, the said orders, insofar as appealed from, should be affirmed, without costs.

On the appeal by plaintiff Jamaica Savings Bank: The judgment should be modified on the law as follows: (a) by striking out the unnumbered subparagraphs of the third decretal paragraph which contain provisions concerning a "Priority Adjustment Fund"; and (b) by substituting therefor provisions directing that the Referee, out of the remaining balance of the proceeds of the sale, if any, pay in the following order and to the extent of the remaining balance: (1) to the local government, all local real estate taxes and assessments, water rates and sewer rents; (2) to plaintiff, the amounts paid by it for taxes for the preservation of the property from the date of the Referee's report of computation; (3) to plaintiff, $13,299.38,

the amount due and owing to it in this action, together with interest thereon from the date of the Referee's report of computation; and (4) to the United States of America, the amount of its lien. As so modified, the judgment, insofar as appealed from, should be affirmed, without costs.

No questions of fact have been considered.

BRENNAN, HILL, RABIN and HOPKINS, JJ., concur.

In the first action: Order of September 14, 1964 modified on the law as follows: (a) by striking out the fourth decretal paragraph declaring the lien of the judgment of the defendant United States of America to be prior and superior to the lien of the real estate taxes and similar charges arising subsequent to the date of the docketing of said judgment; (b) by substituting therefor a provision that the lien of said judgment is inferior to the lien for said taxes and charges; (c) by striking out the sixth decretal paragraph which denied the plaintiff's motion insofar as it sought to strike out the said defendant's answer; and (d) by substituting therefor a provision granting such motion. The order of June 24, 1964, made upon reargument, is modified accordingly. As so modified, the orders, insofar as appealed from, are affirmed, without costs.

In the second action: Judgment modified on the law as follows: (a) by striking out the unnumbered subparagraphs of the third decretal paragraph which contain provisions concerning a "Priority Adjustment Fund"; and (b) by substituting therefor provisions directing that the Referee, out of the remaining balance of the proceeds of the sale, if any, pay in the following order and to the extent of the remaining balance: (1) to the local government, all local real estate taxes and assessments, water rates and sewer rents; (2) to plaintiff, the amounts paid by it for taxes for the preservation of the property from the date of the Referee's report of computation; (3) to plaintiff, $13,299.38, the amount due and owing to it in this action, together with interest thereon from the date of the Referee's report of computation; and (4) to the United States of America, the amount of its lien. As so modified, judgment, insofar as appealed from, is affirmed, without costs. No questions of fact have been considered.