UNITED STATES of America, Plaintiff,

v.

James E. MILLER et al., Defendants.

No. 74 Civ. 1808.

United States District Court,
S. D. New York.

July 16, 1975.

Paul J. Curran, U. S. Atty., S.D.N.Y., New York City, by Naomi Reice Buchwald, Asst. U. S. Atty., for plaintiff.

Flanagan & Ortale, by Robert M. Ortale, Kingston, N. Y., for defendant Carl Stoutenberg.

Schonbrun & Schonbrun, by Harvey A. Schonbrun, Tampa, Fla., for defendant Darlene R. Miller.

## OPINION

ROBERT L. CARTER, District Judge.

The United States moves for summary judgment in this suit to foreclose a mortgage on certain real property in Athens, Greene County, New York. The following facts are undisputed. On November 4, 1970, the United States, acting through the Farmers Home Administration (FmHA), Department of Agriculture, loaned defendants James E. Miller and Darlene Rae Rhoades (formerly Darlene R. Miller and hereinafter referred to by that name) the sum of $18,500. Also on November 4, 1970, the Millers used the proceeds of the loan to purchase the aforementioned real

property. In exchange for the loan, the Millers executed and delivered their 7¼% promissory note secured by a purchase money mortgage on the aforesaid real property. The mortgage was also executed and delivered on November 4, 1970, at the same time as the conveyance to the Millers. The conveyance and the mortgage were recorded in the Greene County Clerk's Office the same day.

On July 26, 1966, defendant Carl Stoutenberg (erroneously named in the complaint as "Carl Stantenberg") filed a judgment in the amount of $598.60 against defendant James E. Miller in the Ulster County Clerk's Office. A transcript of the judgment was filed in the Greene County Clerk's Office on July 28, 1966, and the judgment remains unsatisfied.

Plaintiffs have failed to pay amounts due under the note, and there remains outstanding a balance of $15,878.63,[1] principal amount, plus expenses, plus interest at 7¼%. Under the terms of the note and mortgage, the United States may, on the default of the borrower, declare the entire amount of the principal and interest payable. (Mortgage ¶ 17(a)). Moreover, the mortgage provides that the government may charge to the borrower reasonable expenses for repair and maintenance of the property (Mortgage ¶ 17(b)) and that the borrower is obligated (Mortgage ¶ 11):

"(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compli-

ance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property."

Defendant James E. Miller has failed to answer.[2] Darlene R. Miller's answer admits that the Millers failed to pay amounts due under the note [3] and that the outstanding balance of principal and interest are immediately due and payable.

Therefore, the United States is entitled to summary judgment decreeing that the mortgaged premises be sold, and that the proceeds of the sale be deposited into court.[4] In addition to the outstanding principal of $15,878.63 and interest thereon, the United States is entitled to recover from the proceeds of the sale of the property the advances and expenses specified in paragraphs 11, 17(b) and like provisions of the mortgage. The papers initially filed by the government failed properly to itemize its expenses and advances or to show that they were "reasonably necessary," as required by ¶ 11 of the mortgage. However, the government and the answering defendants were requested to submit additional papers on this and other issues, and the government has now justified its expenses of $3,358.75. (See Affidavit of David J. Nolan, State Director, Farmers Home Administration, State of New York, sworn to June 26, 1975).

---

1. This figure does not include expenses paid by the government which are deemed advances under ¶ 3 and ¶ 4 of the mortgage agreement and like provisions.

2. The complaint alleges that defendant Joan Tuttle was a tenant of the mortgaged premises. Defendants Marine Midland Bank of Troy and W. T. Grant Co. secured judgments against James E. Miller which were docketed in 1967 and 1971, respectively.

Defendant Tuttle has defaulted. Although the government's memorandum states (p. 2)

that Marine Midland and Grant filed notices of appearance and waivers in foreclosure, neither the file nor the docket sheet reflects this.

3. The answer alleges, and the government's proof also reflects, that substantial payments were made after an initial default in January, 1972. The Millers paid a total of $2,621.37 of principal and $1,733.63 of interest under the note and mortgage.

4. The government does not seek a deficiency judgment against the Millers.

■ Turning to the affirmative defenses raised by defendant Stoutenberg's answer and moving papers, Stoutenberg seeks a determination that his judgment, concededly docketed prior to execution and recordation of the FmHA mortgage, has priority over the mortgage. Although a non-purchase money mortgage appears to be subordinate to the interest of a judgment creditor who is prior in time, *see Cobleskill Savings and Loan Association v. Richard*, 15 A.D.2d 286, 223 N.Y. S.2d 246 (3d Dept. 1962), § 5203(a)(2) of the New York Civil Practice Law and Rules clearly states that a *purchase money mortgage* prevails over a judgment creditor's interest even though the latter may be first in time. Section 5203(a)(2) provides in pertinent part:

"(a) * * * No transfer of an interest of the judgment debtor in real property, against which property a money judgment may be enforced, is effective against the judgment creditor * * * from the time of the docketing of the judgment with the clerk of the county in which the property is located * * * except:

* * * * * *

"2. a transfer in satisfaction of a mortgage given to secure the payment of the purchase price of the judgment debtor's interest in the property * * *."

Thus Stoutenberg's interest is subordinate to the government's purchase money mortgage.

■■ Stoutenberg's opposing papers also assert that the government's complaint is not properly verified, as required by New York State Law. Assuming that state procedural rules are applicable,[5] which seems doubtful,[6] Stoutenberg clearly waived the absence of verification by failure to give notice with due diligence. *See Application of Smith*, 2 A.D.2d 67, 153 N.Y.S.2d 131 (1st Dept. 1956). C.P.L.R. Rule 3022 provides in part:

"* * * Where a pleading is served without a sufficient verification in a case where the adverse party is entitled to a verified pleading, he may treat it as a nullity, provided he gives notice with due diligence to the attorney of the adverse party that he elects so to do."

In *Westchester Life, Inc. v. Westchester Magazine Co.*, 85 N.Y.S.2d 34 (Sup.Ct. 1948), the court interpreted the "due diligence" proviso to require that notice be given within twenty-four hours, an interpretation approved by one commentator. D. Siegel, *Practice Commentaries*, 7B McKinney's Consolidated Laws, 396 (1974 ed.). Here the matter was not raised until Stoutenberg answered the motion for summary judgment, eleven months after this action was filed.

■ Stoutenberg also asserts that the Farmers Home Administration violated its own rules by advancing money to the Millers without requiring prior payment of all judgments against them. FmHA regulations, 7 C.F.R. §§ 1807.1 et seq. and 1822.10, do require adequate security for loans and a detailed examination of title. *See, e. g.,* 7 C.F.R. § 1807.2(b). However, these rules are clearly for the benefit of the government, not an adverse claimant, and any such defects in the borrower's title may be waived. *See, e. g.,* 7 C.F.R. § 1807.2 (d)(2).

As a third affirmative defense, denominated "laches," Stoutenberg's answer asserts that the government "has permitted the property to run down and

---

5. This result is not precluded by Rule 11, F.R.Civ.P., which provides

"Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit."

The exception may encompass state rules requiring verification.

6. *See United States v. Merrick Sponsor Corp.*, 421 F.2d 1076 (2d Cir. 1970), *aff'g*, 294 F.Supp. 1048 (E.D.N.Y.1968) (N.Y.R.P.A.P.L. procedural requirements inapplicable to deficiency judgment proceeding following foreclosure of F.H.A. mortgage since such action governed by federal law).

decrease in value" through failure to exercise its rights under the note and mortgage, to the damage of Stoutenberg.

■ The government responds correctly that the United States is not subject to the defense of laches. *United States v. Summerlin,* 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *United States v. Pall Corp.,* 367 F.Supp. 976 (E.D.N.Y.1973); *United States v. Merrick Sponsor Corp., supra,* 294 F. Supp. at 1052. However, despite the denomination of Stoutenberg's defense or counterclaim [7] as one of "laches," the answer appears to allege that the United States as mortgagee was guilty of waste. The doctrine of sovereign immunity bars any action against the United States unless, by specific statutory provision, the United States consents to be sued. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). An action for waste sounds in tort, and by the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* and the corresponding jurisdictional provision, 28 U.S.C. § 1346(b), the United States has waived its immunity with respect to tort actions on the terms defined in the statutes. 28 U.S.C. § 2674 has been construed to provide that the law of the forum state, in this instance New York State, shall govern in actions under the Tort Claims Act. *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Mandelbaum v. United States,* 251 F.2d 748 (2d Cir. 1958).

■ Under New York law, there is a substantive cause of action for waste against one in control of real property who does no more than allow the property to deteriorate and decrease in value, as Stoutenberg alleges the government has done. *300 West Realty Co. v. City of New York,* 43 A.D.2d 680, 350 N.Y.S.2d 147 (1st Dept. 1973). However, this is of no help to Stoutenberg. First, it is settled that, in contrast to the mortgagee who holds a specific lien on the property, a judgment creditor, such as Stoutenberg, is a general lienor without a specific interest in the judgment debtor's property. *Dime Savings Bank of Brooklyn v. Beecher,* 23 A.D.2d 297, 260 N.Y.S.2d 500 (2d Dept. 1965). As a general creditor, the judgment creditor may not maintain an action for damages [8] in waste. *Lanning v. Carpenter,* 48 N.Y. 408 (1872).[9] Second, it appears that an action for waste does not lie against a mortgagee which is not in possession of the premises such as the United States in this case. *Continental Insurance Co. v. Karlan,* 42 A.D. 2d 842, 346 N.Y.S.2d 832 (2d Dept. 1973). This is so even if the mortgagee's employees or other agents are on the premises, as in the *Karlan* case. It therefore appears that under New York law, Stoutenberg has no right of action for or defense of waste against the United States.[10] Stoutenberg was aware of the mortgage held by the United States. If, at any time, he was concerned about deterioration of the property, his remedy was to cause an execution to be issued pursuant to C.P.L.R. § 5230(b) directing

---

7. It appears that the allegations of waste may state a counterclaim, and under Rule 8(b), F.R.Civ.P., the court is entitled to treat them as such.

8. *See,* however, the suggestion in *Dime Savings Bank of Brooklyn v. Beecher, supra,* that a judgment creditor may seek an injunction against waste.

9. By contrast, it appears that a mortgagee may maintain a waste action against a mortgagor. *Union Mortgage Co. v. Nelson,* 82 N.Y.S.2d 268 (Sup.Ct.1948).

10. Because of the disposition made of this case, the court need not consider the government's arguments that the court is without jurisdiction under the exception to the Tort Claims Act for discretionary acts, 28 U.S.C. § 2680(a), and under 28 U.S.C. § 2675, requiring presentation of the claim to the agency prior to suit. It does not seem amiss to point out, however, that if the third affirmative defense is construed as a counterclaim under Rule 8(b), 28 U.S.C. § 2675 is, by its terms, inapplicable.

that the property be sold and that his judgment be satisfied from the proceeds.[11]

In conclusion, the motion of the United States for summary judgment is granted. The mortgaged premises are ordered sold, and the proceeds of sale are to be deposited in court. The United States is entitled to recover $19,237.38 plus interest of $3,025.23 through April 15, 1974, plus interest of $3.8211 for each day thereafter. The United States is also entitled to recover the expenses of the sale and costs. Finally, the defendants and all persons claiming an interest in the subject property after the filing of the notice of pendency herein are foreclosed and barred from any right, title and interest in the property to be sold. The parties shall settle an order within 14 days of this opinion.

11. The mortgage of the United States would, of course, have taken priority even if Stoutenberg had followed this course.