The **TRAVELERS INSURANCE COMPANY**, Plaintiff,

v.

**633 THIRD ASSOCIATES, Tower 41 Associates, Joseph T. Comras, Stanley Stahl, Robert Carmel, and Citibank, N.A., as Trustee of Citibank, N.A. Commingled Employee Benefit Trust, Defendants.**

No. 91 Civ. 5735 (CSH).

United States District Court,
S.D. New York.

March 12, 1993.

Battle Fowler, New York, NY (David Fleischer, Stewart Klein, of counsel), for plaintiff.

Jones, Day, Reavis & Pogue, New York, NY (Marc S. Kirschner, of counsel), for defendant Citibank.

Morgan, Lewis & Bockius, New York, NY (Thomas R. Stritter, of counsel), for defendants 633 Third Associates, Joseph T. Comras, Stanley Stahl, and Robert Carmel.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Accepting the invitation extended by the Second Circuit in *Travelers Insurance Company v. 633 Third Associates,* 973 F.2d 82 (2d Cir.1992), with which familiarity is assumed, plaintiff Travelers has filed an amended complaint for equitable relief to prevent waste, for specific performance, and to set aside allegedly fraudulent conveyances. Defendants move to dismiss the amended complaint under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted, or in the alternative for summary judgment under Rule 56.

At the outset I must consider what the court of appeals said and what it did not say.

The court of appeals' opinion concludes with these words:

> We emphasize the narrowness of our decision: we merely vacate the dismissal of the action and direct the district court to permit plaintiff to file an amended complaint. Whether the amended pleading survives a new motion to dismiss is a matter for the district court to decide in further proceedings consistent with this opinion.
>
> Vacated and remanded with instructions to grant plaintiff leave to amend complaint.

*Id.* at 88.

While the decision is indeed narrow, I am nonetheless directed to consider the legal sufficiency of the amended complaint "in further proceedings consistent with this opinion." Travelers professes to find in the Second Circuit's opinion unequivocal holdings that it characterizes as the law of the case, leaving this Court very little to do on remand. Defendants take a different view. They say that all the court of appeals intended to do was grant leave to file an amended complaint asserting particular equitable claims, leaving it to the district court to consider *ab initio* the viability of those claims.

While these opposing contentions reflect to a degree the excesses of advocacy, defendants are significantly closer to the mark. Travelers supports its contention by selective editing of what the court of appeals actually said. Thus Travelers argues in its brief at 21 that the court of appeals "squarely decided that a mortgagor's willful failure to pay taxes on the mortgaged property constitutes waste under New York law," citing to 973 F.2d at 86, and then purports to quote the opinion in parenthesis: ("the courts of New York would include the willful failure to pay property taxes among the actionable grounds for a suit

claiming waste."). Travelers goes on to say that the court of appeals' opinion "on this (and other) issues constitutes the law of the case," so that defendants "are not free to re-litigate whether, under New York law, a failure to pay taxes may constitute waste." *Id.*

In point of fact, what the Second Circuit actually said on this point is this:

> An owner's willful failure to pay taxes due on mortgaged real property has been held to be actionable waste remediable at equity in other jurisdictions. *See Straus v. Wilsonian Inv. Co.*, 171 Wash. 359, 17 P.2d 883, 883 (1933). The principle makes good sense—from the secured creditor's vantage point, a tax lien on the secured property may be as costly as a leaky roof—and *we presume* the courts of New York would include the willful failure to pay property taxes among the actionable grounds for a suit claiming waste. 973 F.2d at 85–86 (emphasis added).

Similarly, Travelers' brief says at 27 that the legal viability of its claim for specific performance of the Partnership's breach of contractual covenants "as a matter of law was also determined by the court of appeals which held that the exculpation provisions in the mortgage do not bar equitable remedies for breach of contract *including specific performance,*" citing to 973 F.2d at 86. What the Second Circuit actually said was:

> The Partnership in any event specifically assumed liability for payment of property taxes for the mortgaged property; plaintiff *may be entitled* to sue in equity for a specific performance of the Partnership's contractual duties.

*Id.* at 86 (emphasis added).

At oral argument counsel for Travelers vigorously pressed the contention that these utterances by the Second Circuit constituted holdings on points of law that are binding on this Court as the law of the case. In counsel's view, the Second Circuit was saying that in the absence of definitive opinions by the New York Court of Appeals to the contrary,

the quoted language constitutes holdings as to what New York's highest tribunal would say when confronted with the issues.

It is presumptuous for me to suggest what the Second Circuit meant by "presume"; and I may be criticized for construing what that court meant by "may." But these risks come with the territory. I find myself unable to accept the submissions of counsel for Travelers. I think the court of appeals would be surprised to be told that in presuming that the New York Courts would reach a certain result, it held conclusively that they would; or, in saying that Travelers may be entitled to sue in equity for specific performance, it intended to hold unequivocally that the right existed on the facts of this case. These interpretations, it seems to me, stretch the plain meaning of Chief Judge Parker's words,[1] a jurist who does not leave his readers in doubt when he is announcing a holding.

And while it may compound my own sin of presumption to say so, it seems to me that the Second Circuit's tentative (as I view them) reflections do not proceed from established and pertinent authority. For the proposition that a property owner's willful failure to pay taxes due on mortgaged real property constitutes "actionable waste remediable at equity," the court of appeals cited only *Straus v. Wilsonian Inv. Co.*, 171 Wash. 359, 17 P.2d 883 (1933). *Straus* was an appeal from an order appointing a receiver in an action to foreclose a mortgage. The mortgagor had failed to pay real estate taxes, while diverting rental income to its own officers. In those circumstances, the Supreme Court of Washington affirmed the order appointing a receiver. The *Straus* court relied upon an earlier Washington case that answered in the affirmative the question: "Are delinquent taxes alone a proper ground for the appointment of a receiver in the foreclosure of a mortgage, it being admitted that the security is inadequate to discharge the debt and that no deficiency judgment can be taken?" The quotation in *Straus* from that earlier case, *Newman v. Van Nortwick*, 95

---

1. The Second Circuit's opinion was written by Chief Judge Fred I. Parker of the District of

Vermont, sitting by designation.

Wash. 489, 164 P. 61 (1917), includes statements that: "The payment of taxes is necessary to the preservation of the property," and: "Equity devolves it upon him who has the use; not to pay them is waste."

Holdings such as these would have been pertinent to Travelers' application to the State court for the appointment of a receiver, the Partnership having defaulted in paying the real estate taxes due on January 1, 1992. Of course, Travelers did not need to cite Washington authority to obtain that requested relief from the New York court. But it is not clear that a case like *Straus* supports Traveler's theory of an equitable action directly against the mortgagor for waste resulting from a failure to pay real estate taxes. At least, that was not the holding in *Straus*.

As for the possibility of an equitable action for specific performance, the only authority the Second Circuit cited in holding out that possibility is *AMF, Inc. v. Brunswick Corp.*, 621 F.Supp. 456, 462 (E.D.N.Y.1985). The facts in *AMF* bear no resemblance to those at bar. Judge Weinstein held that a manufacturer of bowling equipment would be required to comply with a settlement agreement with a competitor providing for a nonbinding advisory opinion in a dispute over priority of advertising claims. The court derived its authority to direct that specific performance from "the Federal Arbitration Act and pursuant to this Court's equity jurisdiction." *Id.* at 463.

■ The Second Circuit's unequivocal ruling, as opposed to ruminations, appears at 973 F.2d 86:

> Under the circumstances, we must reverse the district court's ruling that the exculpation clause in the loan and mortgage documents deprived plaintiff of standing *simpliciter*."

I take that holding to mean only that the exculpation clause's barring of claims at law does not foreclose plaintiff from attempting to assert viable claims in equity.[2] But the Second Circuit left the evaluation of Travelers' equitable claims to this Court, at least in the first instance; and I fail to perceive in Chief Judge Parker's opinion any law of the case which would dictate the result.

It is particularly difficult for Travelers to argue law of the case when one considers that the Second Circuit observed that Travelers failed to set forth its equitable argument "with clarity or completeness in the briefs," *id* at 85 n. 5, adding in text: "Whether plaintiff can sustain—or adequately plead— an equitable action against the defendants as described cannot be determined on the present record." *Id.* at 87.

In these circumstances, I will consider under the governing New York law the legal sufficiency of the equitable claims Travelers asserts in its amended complaint.

### Waste

Travelers' first claim for relief is an equitable action for waste. Travelers alleges that on January 1, 1992 the Partnership failed to pay the semi-annual installments of real estate taxes due in respect of the property to the City in the aggregate amount of $3,803,-888.04. On or about January 24, 1992, the Partnership made a payment of $426,394.99 in respect of those delinquent real estate taxes, but has failed to pay the balance of $3,377,493.05, and has failed to pay all real estate taxes thereafter becoming due. In July 1992 the Receiver appointed by the State court in response to Travelers' foreclosure proceeding paid $3,424,263.80 in real estate taxes due on July 1, 1992. Amended Complaint, ¶¶ 31–32.

Travelers alleges that the Partnership's failure to pay the real estate taxes due on January 1, 1992 and thereafter "has constituted and will continue to constitute waste," *id.*, ¶ 38; and that the Partnership's failure "to comply with various laws affecting the Property and to maintain the Property in good condition and repair has constituted and will continue to constitute waste." *Id.* ¶ 39. Travelers prays that the Partnership be enjoined "from its ongoing acts of waste in respect of the Property"; and that the

---

**2.** *"Simpliciter"* means, *inter alia,* "By itself; by its own force; *per se." Black's Law Dictionary* (4th ed. 1951) at 1555.

Partnership be directed to pay the unpaid real estate taxes due on January 1, 1992 together with fines, interest, penalties and costs; to reimburse the Receiver for real estate taxes paid by the Receiver in July 1992; to pay all real estate taxes that shall become due after July 1, 1992; to pay or reimburse the Receiver for all amounts necessary to correct violations of law affecting the Property, and to reimburse the Receiver for all amounts expended by the Receiver to restore the property to good condition and repair.

In order to evaluate the viability of such claims under New York law, it is necessary to consider in greater detail the foreclosure proceeding commenced by Travelers in the State court and the consequent appointment of a Receiver to manage the affairs of the office building that forms the subject matter of the action.

On January 14, 1992 Travelers commenced a foreclosure action against the property in New York Supreme Court, New York County. Travelers prayed for the appointment of a Receiver. On January 27, 1992 the State court (Santaella, *J.*) signed an order appointing Maryam Toosie as the Receiver of the property. The Receivership order provided in part:

> [t]hat Maryam Toosie ... be and hereby is appointed, with the usual power and directions, Receiver for the benefit of [Travelers] of all the rents, fees, issues, profits, reimbursables and other sums including but not limited to payments on account of real estate taxes, operating expenses and utilities (collectively, the "rents") now due and unpaid or to become due during the pendency of this action ... including but not limited to all rents due and unpaid or to become due from all tenants, occupants or licensees at or of the Mortgaged Property or any part thereof.

The Receivership order further required all persons in possession of the property to surrender that possession to the Receiver; authorized the Receiver to collect all rents from the property; directed tenants to pay rents to the Receiver; prohibited tenants from paying rents to the Partnership; and authorized the Receiver to pay, among other things, all "real estate taxes and assessments" and other operating expenses "which are due or shall become due." Receivership order at 4–5. As for the Partnership, the Receivership order directed the Partnership to refrain from collecting the rents "and from interfering in any manner with the Mortgaged Property or its possession," and to turn over to the Receiver all leases and other operational documents, all security deposits or advance payments of rent, and any rents received on or after January 27, 1992. *Id.* at 6–7.

The practical consequence of the Receivership order is that as of January 27, 1992, the Partnership has been ousted from possession and control of the building, and has not collected rents. The $426,394.99 paid by the Partnership in respect of the semi-annual installment of real estate taxes due on January 1, 1992, referred to in ¶ 31 of the Amended Complaint, represents an allocation of the real estate taxes ascribable to the period between January 1 and January 27, the effective date of the receivership order.

■ New York law places a considerable obstacle in the path of Travelers' equitable claim to restrain continuing waste. Under New York law, current possession by the defendant is a necessary element of the plaintiff's cause of action for waste.

In *United States v. Miller,* 400 F.Supp. 1080, 1084 (S.D.N.Y.1975), construing New York law, Judge Carter said, "[i]t appears that an action for waste does not lie against a mortgagee which is not in possession of the premises ..." Judge Carter cited for that proposition *Continental Insurance Co. v. Karlan,* 42 A.D.2d 842, 346 N.Y.S.2d 832, 833 (2d Dept.1973) ("In the absence of an allegation that appellants (holders of the mortgage) were in possession of the premises (either actually or constructively), it would seem clear that no action for waste would be maintainable against them.")

These were actions in tort for damages occasioned by waste. While the Second Circuit observed in the case at bar at 973 F.2d 85 that "[a]lthough plaintiffs typically seek damages, they may also request a court injunction to prevent the commission of waste,"

the New York case cited for that proposition involved properties currently in possession of the debtor-mortgagors. *Dime Savings Bank of Brooklyn v. Beecher*, 23 A.D.2d 297, 301, 260 N.Y.S.2d 500, 504 (2d Dept.1965). *Beecher* refers to the early New York case of *Van Demark v. Schoonmaker*, 9 Hun 16, 21 (3rd Dept.1986), saying of *Van Demark*, that "the interest of the judgment creditor in the land was held to be such as to entitle him to an injunction against waste, it having been shown that the premises were inadequate security and that the judgment creditor's only remedy for obtaining payment was limited to the land in question." 260 N.Y.S.2d at 504. In *Van Demark*, the plaintiff had recovered a judgment against the defendant's devisor; land then possessed by the defendant constituted the only source of payment of the judgment; and plaintiff sought and obtained an injunction restraining the defendant in possession from the commission of waste by cutting and removing timber from the land, where such acts diminished the value of the premises and impaired plaintiff's only security.

In *Travelers*, the Second Circuit also cited *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1050–52 (2d Cir.1985), where the district court issued an injunction under the New York public nuisance law to clean up a hazardous waste storage site. The defendants were in possession of the site when the injunction was sought.

Seeking to avoid the thrust of these cases, counsel for Travelers said at oral argument that the concept of "possession" in the case at bar is "tricky" because the Partnership enjoys an "equity of repossession." I would not suppose that circumstance to be unusual; in any event, I agree with defendants that the key element of possession in this case is the cash stream produced by the building's rentals, from which such obligations as real estate taxes can be paid. It is common ground that since his appointment, the Receiver has possessed that cash stream, and the Partnership has been deprived of it.

■ In the light of these New York cases, I hold that Travelers has no cause of action against the Partnership to prevent waste with respect to debts or conduct incurred or committed subsequent to January 27, 1992, when the Partnership was ousted from possession at Travelers' behest.

As noted, the Second Circuit was entirely unaware of Travelers' State court foreclosure action and the receivership order when on August 17, 1992 it handed down its opinion. Defendants tried to bring those matters to the court of appeals' attention on a motion for rehearing, referring to them in the motion and attaching copies of the State court papers. The documents were excised by the scissors-wielding guardians of the gate in the office of the Clerk of the Second Circuit. *See* Declaration of Thomas W. Pippert, Esq., ¶¶ 3–5. The court of appeals denied the motion for rehearing without opinion, that being the disposition of the vast majority of such efforts. One cannot be sure, but it seems to me unlikely that the Second Circuit would have sanctioned the filing by Travelers of an equitable action "to *prevent* waste," 973 F.2d at 85 (emphasis added), if the court had known that the Partnership had lost possession of the property and the ability to collect rents seven months earlier.

Arguably the $3,803,888.04 semi-annual installment of real estate taxes that fell due on January 1, 1992 stands on a different footing. The Partnership was still in possession of the building on that date. The Partnership could have paid the full installment then but did not do so, choosing instead to distribute about $17 million in cash to Tower 41 and Citibank on or about January 13, 1992 (*see* Amended Complaint, ¶ 26), a distribution that Travelers vigorously condemns.

As alleged in the Amended Complaint at ¶ 31, on or about January 24, 1992 the Partnership made a payment of $426,394.99 on account of the January 1, 1992 real estate tax installment. That payment represents an allocation between the six-month period prospectively covered by the tax installment and the 27 days in January during which the Partnership was in possession of the premises.

Travelers says that partial payment does not satisfy the Partnership's obligation. As noted, Travelers' first demand under the rubric of an equitable claim for waste is that

the Partnership be directed to pay the balance of the six-month tax installment.

The significance New York law attaches to the possession of real property defeats this claim as well. The governing principle is illustrated by *Wilson & Co., Inc. v. City of New York,* 73 N.Y.S.2d 206 (Sup.Ct.N.Y.Co. 1947), *aff'd without opinion,* 276 App.Div. 755, 92 N.Y.S.2d 918 (1st Dept.1949), *motion for leave to appeal denied,* 276 App.Div. 894, 94 N.Y.S.2d 198 (1st Dept.1950). The real property in question was first owned by the City and rented to plaintiff Wilson; on March 21, 1941 plaintiff became a vendee in possession under an agreement of sale; and on November 10, 1943 the premises were conveyed by the City to plaintiff under that agreement of sale. The parties disputed liability for real estate taxes during these several periods. Real estate taxes were assessed in semi-annual installments on January 1 and July 1 of each year.

The court held that plaintiff as tenant of the property was not liable for taxes covering the period between January 1, 1941 and March 21, the date of the agreement of sale. The court then went on to say:

> With the execution of the agreement of sale, the vendee in possession, namely, the plaintiff, became responsible for the payment of taxes.

> As a general rule the vendee in possession of real property under an executory contract of sale is regarded as the owner for purposes of taxation, though much depends upon the language of the particular state statute. *People ex rel. Donnre–Union Coke Corporation v. Burke,* 204 App.Div. 557, 559, 198 N.Y.S. 601, 603, affirmed 236 N.Y. 650, 142 N.E. 320.

> The burden of taxation is rightfully placed upon possession rather than ownership. *Cf. Stieff v. Tait, D.C.,* 26 F.2d 489, affirmed 4th Cir., 31 F.2d 1020. The plaintiff is therefore liable for the taxes accruing after March 21, 1941, and during its occupancy as vendee in possession.

> After November 10, 1943, the date of the conveyance of the premises by the City,

the Court holds the plaintiff as owner in possession is liable for the taxes accruing. 73 N.Y.S.2d at 209.

■ Applying *Wilson* 's rationale that "the burden of taxation is rightfully placed upon possession rather than ownership" to the closely analogous facts at bar, the Partnership's liability for the January 1, 1992 tax installment terminated when it lost possession of the property on January 27. *Wilson* presents the converse of that proposition: the tenant's tax liability commenced when it became a vendee in possession, even though ownership of the property remained in the City, just as ownership of the property at bar remains with the Partnership during the pendency of the foreclosure proceeding. The Receiver is the analog in the case at bar to the vendee in possession in *Wilson.*

I think that the allocation made by defendants with respect to the January 1, 1992 six-month real estate tax installment complies with New York law. I am reinforced in that conclusion by two earlier Second Circuit opinions construing New York law: *Prudential Ins Co. of America v. Liberdar Holding,* 74 F.2d 50 (2d Cir.1934), and *MacGregor v. Johnson–Cowdin–Emmerich, Inc.,* 39 F.2d 574 (2d Cir.1930). These cases are instructive because they both considered the obligation of a receiver of mortgaged property for real estate taxes.

*MacGregor* holds "that a receiver must pay as expenses of the receivership any taxes falling due during the period of his occupancy," a holding thus summarized in *Liberdar* at 74 F.2d 52. *Liberdar* deals with the apportionment of responsibility for real estate taxes in the context of a receivership. The case began as an action commenced in the United States District Court to conserve the company's property and business for the benefit of creditors. Receivers were appointed in that action on September 6, 1933. On December 15, 1933 the owner of mortgages covering the company's real property petitioned the district court for leave to institute foreclosure suits in the New York Supreme Court, which leave the district court granted. The mortgagee also asked that the receivers be directed to apply rents that had passed to them from the company on their appoint-

ment, as well as rents collected by them thereafter, toward the liquidation of the unpaid taxes on the mortgaged properties and accrued interest. The district court ordered the receivers to segregate all rents collected subsequent to the filing of the mortgagee's petitions on December 15, 1933, after allowance of expenses of administration therefrom, but otherwise denied its applications. The Second Circuit, after citing *MacGregor* for the proposition that a receiver must pay any taxes falling due during the receivership, went on to say:

> Accordingly, taxes due November 1, 1933, should be paid by the receivers from rents accruing between the date of their appointment on September 6 and December 15, 1933 when the petitions seeking to appropriate the rents were filed by the mortgagor. While it is argued that these taxes ought to be prorated and that only the proportion thereof which the above period bore to the six months of the year covered by the taxes due on November 1 should be paid by the receivers, we think that they should have declined to take over the property if they did not wish to pay the full amount of taxes falling due while it was under their management.

*Id.* at 52.

The court of appeals resolved the rights and obligations of the several interests as follows:

> We hold (1) that the receivers are entitled to all sums in the hands of Liberdar Holding Corporation at the time they were appointed, whether derived from the mortgaged premises or otherwise; (2) that the receivers are entitled to all rentals, accruing between September 6 and December 15, 1933, after paying taxes due November 1, 1933, and other expenses of operation properly allowable therefrom; (3) that the receivers should collect for the benefit of the mortgage the rentals accruing after December 15, 1933, and hold the same while paying current taxes and expenses therefrom until the further order of the court.

*Id.* at 53.

*MacGregor* and *Liberdar*, both of which construe and apply New York law, support

and justify the positions taken by the defendants at bar.

Accordingly I conclude that Travelers' effort to charge the Partnership with more than a proportionate share of the January 1, 1992 tax installment fails under New York law.

The conclusions I have reached thus far make it unnecessary for me to consider defendants' third contention, that under New York law the concept of waste does not include a property owner's willful failure to pay property taxes and does not constitute waste recoverable by an action in equity against him. As noted, the Second Circuit presumed that it did. But the parties had not briefed the question, and as noted *supra*, the Washington case referred to by the court of appeals involved a quite different procedural posture (appointment of a receiver).

Defendants cite two New York cases for the proposition that waste is limited to physical damage to the property, and does not include a failure to comply with financial covenants of a mortgage (such as an obligation to pay real estate taxes). These cases are *Ganbaum v. Rockwood Realty Corp.*, 62 Misc.2d 391, 308 N.Y.S.2d 436, 441 (Sup.Ct. Bronx Co.1970), which states generally that "[w]aste consists of physical damage to the mortgaged property and not the failure to comply with the financial conditions of a mortgage," and the case cited in *Ganbaum* as authority for that proposition, *Union Mortgage v. Nelson*, 82 N.Y.S.2d 268 (Sup.Ct. N.Y.Co.1948), *aff'd*, 275 App.Div. 1028, 91 N.Y.S.2d 839 (1st Dept.1949), in which the appellate division said: "The allegations sought to be added by the amended and supplemental complaint are factually nothing more than non-payment of first mortgage interest and taxes. This is not waste in a legal sense."

*Union Mortgage* involved a claim by a junior mortgagee against mortgagors who had failed to make interest and tax payments required by the senior mortgage, with the consequence that liens superior to the plaintiff's junior mortgage were created. The junior mortgagee sued the mortgagors for waste. The trial court dismissed the claim, stating at 82 N.Y.S.2d 270:

It is true that the failure of a life tenant to pay taxes has been held waste insofar as the remainderman is concerned. *Stetson v. Day*, 51 Me 434. But a junior mortgagee is not a remainderman, and a mortgagor is not a life tenant. It is significant that despite the long history of the common law action in the nature of waste, there are no cases to be found holding a mortgagor liable in a case such as the instant one.

Affirming the dismissal, the First Department said at 91 N.Y.S.2d 839:

> The allegations sought to be added by the amended and supplemental complaint are factually nothing more than non-payment of first mortgage interest and taxes. This is not waste in a legal sense.

*Ganbaum,* which cited and followed *Union Mortgage,* also involved an action by a second mortgagee, but the case is of broader application since the plaintiff charged the party in possession of the property with waste in respect of a failure "to apply the rents upon the subject real property to the payment of real estate taxes, sewer and water rents, other charges, and interest and principal on the first mortgage *and plaintiff's second mortgage.*" 308 N.Y.S.2d at 437 (emphasis added). It is in that context that the *Ganbaum* court stated generally that waste consists of physical damage "and not the failure to comply with the financial conditions of a mortgage."

Travelers criticizes these cases as wrongly decided, without citation to higher New York authority; and does not succeed in distinguishing them on the facts, relying instead upon cases emphasizing the breadth and flexibility of the doctrine of waste. *See, e.g., Van Pelt v. McGraw,* 4 N.Y. 110, 111–12 (1850) ("It forms no objection to this action that the circumstance of the case are novel, and that no case precisely similar in all respects has previously arisen. The action is based upon very general principles, and is designed to afford relief in all cases where one man is injured by the wrongful act of another, where no other remedy is provided...."). Travelers also points out that other jurisdictions have held that non-payment of real estate taxes can constitute actionable waste, *see*

cases collected in plaintiff's brief at 23 n. 12, arguing from them that "[t]here is no reason to expect the courts of New York to ignore these many other jurisdictions or to reverse or narrow their established general principles of waste in order to foster the inequitable result sought by defendants." *Id.*

Surely *Ganbaum* and *Union Mortgage* favor defendants, and cast doubt upon the presumption in which the Second Circuit indulged. But the New York Court of Appeals has apparently not addressed the issue, and I find myself unable to predict with confidence what it would do. Accordingly I ground my decision dismissing Travelers' first claim for waste on the other principles of law discussed *supra.*

## Specific Performance

Travelers' second claim for relief alleges that the Partnership's failures to pay real estate taxes as they became due, to comply with various laws affecting the property, and to maintain the property in good condition and repair and to maintain insurance covering it "has constituted and will continue to constitute a breach of the Partnership's obligations under the Mortgage." Amended Complaint ¶ 44. Travelers prays for specific performance directing the Partnership to take the several steps comparable to those prayed for in the first claim for waste.

I think it fair to say that the Second Circuit was primarily concerned with the possibility of an equitable action for waste on Travelers' behalf. *See, e.g.,* the continuing discussion at 973 F.2d 87: "Plaintiff has a cognizable interest in preserving the property from waste, an interest which arose at the closing of its security agreement, prior to the conveyance of the cash assets to the partners.... Travelers seeks only to preserve the property rights it had prior to the conveyance, to wit, recourse to the secured property and the right to equitably restrain its waste." I have concluded *supra* that the application of New York law to the facts as more fully developed, including the Receiver's ouster of the Partnership from possession of the property on January 27, 1992, forecloses any claim for waste.

To be sure, the Second Circuit also said that plaintiff "may be entitled to sue in equity for specific performance of the Partnership's contractual duties," *id.* at 86, citing only *AMF Inc., supra,* a case that with all due deference, I regard as inapposite.

I think it clear that when the Second Circuit raised the possibility of a suit in equity for specific performance, it assumed (contrary to the fact) that the Partnership was still in possession of the building. However, by that time the Receiver was in possession, collecting the rents, and was not only authorized but required by New York law to make the payments in question.

■ Given the facts now fully revealed, I agree with defendants that Travelers' specific performance are *au fond* claims to recover monies which are placed beyond Travelers' reach by the non-recourse provisions of the mortgage.

The mortgage contains Travelers' agreement that "the [defendants'] obligations in the Note and Mortgage shall not be enforced by any action *or proceeding* wherein damages *or any money judgment* is sought against any of [the defendants]." Mortgage, ¶ 44 (emphasis added). The second claim for relief in Travelers' amended complaint is a "proceeding" in equity seeking "a money judgment." [3] I think the claim is barred by the exculpation clause, and I do not think that the court of appeals' prior opinion precludes me from saying so.

■ While in proper circumstances a court of equity may direct specific performance requiring the payment of money, *see, e.g., Sharon Steel Corp. v. Chase Manhattan Bank, N.A.,* 691 F.2d 1039, 1053 (2d Cir.1982) (indenture trustees entitled to seek specific performance requiring payment of redemption premiums when liquidating debtor corporation caused the debentures to become due and payable by its voluntary actions), the equity court must give full consideration to the contract as a whole before granting or withholding such relief. The New York Court of Appeals has said that a court of

equity must "look to the contract as a whole, to the subject with which it deals, to the circumstances under which it was made and thereby determine the true intent and purpose of the parties ..." *People ex rel. New York Central & Hudson River R.R. Co. v. Walsh,* 211 N.Y. 90, 100, 105 N.E. 136 (1914). That principle is illustrated by *Sharon Steel,* upon which Travelers relies. In reversing the trial judge's refusal to make an order of specific performance, the Second Circuit said at 691 F.2d 1053:

> The acceleration provisions of the indentures are explicitly permissive *and not exclusive of other remedies.* We see no bar, therefore, to the Indenture Trustees seeking specific performance of the redemption provisions where the debtor causes the debentures to become due and payable by its voluntary actions. (emphasis added).

In the case at bar, Travelers seeks to recover defendants' funds to which Travelers agreed it would have no recourse.

■ A court of equity should not be asked to exalt form over substance. But that is what Travelers asks this Court to do when it seeks to reach the funds of these defendants in the guise of an equitable order of specific performance. I agree with defendants that *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), furnishes a useful analogy.

Kovacs was an officer and shareholder of a waste disposal site which polluted public waters. Ohio sued Kovacs in the state court "and secured a negative order to cease polluting, an affirmative order to clean up the site, and an order to pay a sum of money to recompense the State for damage done to the fish population." *Id.* at 279, 105 S.Ct. at 708. Kovacs failed to comply with the clean-up injunction, whereupon Ohio obtained the appointment of a state court receiver who was directed to take possession of all property and other assets of Kovacs and the corporate defendants and to implement the clean-up order. Kovacs then filed for bankruptcy; and the case that reached the Supreme Court arose out of Ohio's efforts to require "part of

---

**3.** That perception is reinforced by New York law's broad definition of a "money judgment": "A 'money judgment' is a judgment, or any part

thereof, for a sum of money *or directing the payment of a sum of money."* N.Y.C.P.L.R. § 105(q) (McKinney's 1990) (emphasis added).

Kovacs' postbankruptcy income to be applied to the unfinished task of the receivership." *Id.* at 276, 105 S.Ct. at 706. The Court held that Ohio could no longer subject Kovacs to an injunctive claim, stating at 283, 105 S.Ct. at 710:

> Although Kovacs had been ordered to "cooperate" with the receiver, he was disabled by the receivership from personally taking charge of and carrying out the removal of wastes from the property. What the receiver wanted from Kovacs after bankruptcy was the money to defray clean-up costs.... On the facts before it, and with the receiver in control of the site, we cannot fault the Court of Appeals for concluding that the clean-up order had been converted into an obligation to pay money, an obligation that was dischargeable in bankruptcy. (footnotes omitted).

The opinion in *Kovacs* concludes: "As the case comes to us, however, *Kovacs* has been dispossessed and the State seeks to enforce his cleanup obligation by a money judgment." *Id.* at 285, 105 S.Ct. at 711. The Court's characterization of Ohio's claim as one for a money judgment was crucial, because such a claim was dischargeable in bankruptcy, as the Court held.

So in the case at bar, with the Receiver in control of the property, Travelers' second claim, although clad in the equitable raiment of specific performance, must be characterized as a claim for a money judgment. That claim is barred, not by bankruptcy as in *Kovacs,* but by the non-recourse and exculpation clauses of the mortgage.

Accordingly Travelers' second claim for equitable relief also fails.

*Remaining Claims for Relief*

Travelers' third, fourth, fifth and sixth claims for relief all invoke the concept of fraudulent conveyance. The Second Circuit made it plain that Travelers' ability to invoke a fraudulent conveyance remedy depended on the viability of its equitable theories. *See* 973 F.2d at 87 ("However, to the extent plaintiff would have been entitled, absent the conveyance, to obtain an equitable decree enjoining the Partnership to apply its cash assets in a manner to preserve the property's value, it may likewise 'reach' the cash assets for the same purpose in the fraudulent conveyance action."). Travelers' equitable claims having failed, their fraudulent conveyance claims fall with them.

The amended complaint will be dismissed in its entirety. That dismissal moots defendants' cross-motion for a stay of discovery.

## CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to dismiss the amended complaint as to all defendants with prejudice.